RELPH v. NATIONAL LUMBERMAN'S BANK.

1. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — DIFFERENT FLOOR LEVELS.

Woman who, finished with transaction of business with bank employee whose desk was on a platform six inches above normal floor level, rose from chair on platform where she had been sitting and in backing through doorway in railing around platform onto normal floor level fell and sustained serious injuries *held*, guilty of contributory negligence as a matter of law.

2. Same—Different Floor Levels.

Different floor levels in private and public buildings, connected by steps, are so common that possibility of their presence is anticipated by prudent persons, and therefore such construction is not negligent unless, by its character, location, or surrounding conditions, a reasonably prudent person would not be likely to expect step or see it.

3. Same—Contributory Negligence.

One going about in public places or semi-public places when possessed of his natural faculties may not escape being charged with negligence if he is heedless of his own safety, and if he fails to use the care that an ordinarily careful person would have used in like surroundings, and in consequence sustains injury, he must bear his own misfortune.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 14, 1937. (Docket No. 89, Calendar No. 39,349.) Decided May 21, 1937.

Case by John Relph, individually and as assignee of Amelia Relph, against National Lumberman's Bank and Lumberman's Securities Corporation, Michigan corporations, for damages for personal injuries sustained by plaintiff's assignor in defendants' building. Verdict for plaintiff. Judgment for defendants notwithstanding verdict. Plaintiff appeals. Affirmed.

*Harry W. Jackson,* for plaintiff.

*Travis, Merrick & Johnson (L. K. Varnum,* of counsel), for defendants.

North, J. This is an action by plaintiff, as assignee of his wife, and in his own right, for injuries sustained by her and expenses incident thereto, alleged to have been caused by the negligence of an assistant cashier of defendant bank while she was

transacting business on defendants' premises.  It is alleged and admitted that the bank was operated by the two defendant corporations in the city of Muskegon.  Mrs. Amelia Relph at noon on December 27, 1934, went to the bank to transact certain business with one of the officials, John Dykema.  On entering the bank, to the left is a platform which is elevated about six inches above the main floor, and this is used as office space for certain of the bank's employees. This space, except for openings or doorways, is inclosed by a partition about four feet high, topped by a marble railing.  Immediately to the right of one of these openings, and on the inside of the inclosure, Mr. Dykema's desk was placed so that when he was seated he could look out over the railing and into the lobby of the bank.  On the opposite side of his desk was placed a chair for the accommodation of persons whom he interviewed.  A person seated in this chair would of necessity have his back toward the lobby.

At the time Mrs. Relph entered the bank Mr. Dykema was not present but an employee of the bank pointed out his desk to her and she stepped inside the inclosure and seated herself in the chair in front of Mr. Dykema's desk.  Within 10 or 15 minutes he returned, they discussed their business, and then Mrs. Relph stood up and was ready to leave.  Her testimony describes the accident as follows:

"As I rose he rose with me and walked way around the side of the table and stood right there in front of me so close. I sort of stepped back a little, a little sideways, I don't know how.  I fell so quickly I don't know how it happened.  I fell so quick and the step was so close back of the chair, you see. * * * the step, you know, the raise, was back of the chair and getting up, I naturally got up like this and walked about this far, and Mr. Dykema was standing at the

edge of the table right in front of me, and I must have stepped back like that and I fell sideways. My foot went right off the step and there was nothing there to catch myself.''

As a result of the fall Mrs. Relph sustained a fracture of the left hip and was taken in an ambulance to the Hackley Hospital where she was confined until April 16th, or nearly four months.

Amelia Relph assigned her cause of action to her husband, John Relph, and he brought this suit to recover for the injury, for pain and suffering, for hospital and doctor bills, loss of services, and other expenses resulting from the accident.

The trial court submitted the case to the jury, reserving a motion for a directed verdict under the Empson act (3 Comp. Laws 1929, § 14531 *et seq.*). A verdict in the sum of $650 was rendered in favor of the plaintiff, which was set aside in the circuit court and a judgment of no cause of action entered on the ground that there was no proof of negligence. Plaintiff has appealed.

The only question involved is whether the trial court was in error in ordering judgment notwithstanding the verdict. Plaintiff's theory of his right to recover is indicated by the following from his brief:

''We are willing to grant that the maintenance of this platform was not negligence, but we do maintain that it should have been properly safeguarded by a gate or bar such as was afterwards placed in the doorway. And that there was negligence in so arranging the desk and chair occupied by the customer as to place the customer within dangerous proximity of this opening.''

Appellant also stresses to some extent that at the time the accident occurred Mrs. Relph's attention

was being given to Mr. Dykema by reason of the conversation they were holding, in other words it is claimed that Mrs. Relph's attention was somewhat distracted from her surroundings. Consideration of this whole record forces the conclusion that there was nothing extraordinary in the nature of a distracting circumstance which justified or excused Mrs. Relph for not having exercised ordinary care and caution. Conclusively she had knowledge of the difference in floor levels. In going to the place where she was seated she had just stepped upon the raised platform. There was no occasion for defendant bank or any of its employees to have anticipated that Mrs. Relph would negligently attempt to back through the doorway leading from the platform to the normal floor level. The only explanation for her having done so is her own thoughtlessness concerning her own personal safety.

"Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location, or surrounding conditions, a reasonably prudent person would not be likely to expect a step or see it." *Garrett* v. *W. S. Butterfield Theatres, Inc.,* 261 Mich. 262.

"This court is definitely committed to the holding that one going about in public places or semi-public places when possessed of his natural faculties may not escape being charged with negligence if he is heedless of his own safety. If he fails to use the care that an ordinarily careful person would have used in like surroundings, and in consequence sustains injury, he must bear his own misfortune." *Blankertz* v. *Mack & Co.,* 263 Mich. 527, 533.

As being somewhat in the same field of the law, the following cases may be noted: *Evans* v. *Ortten-*

*burger*, 242 Mich. 57; *Rice* v. *Goodspeed Real Estate Co.*, 254 Mich. 49; *Boyle* v. *Preketes*, 262 Mich. 629.

Judgment entered in the circuit court is affirmed. Costs to appellees.

Fead, C. J., and Wiest, Butzel, Bushnell, Sharpe, Potter, and Chandler, JJ., concurred.