BLANKERTZ *v.* MACK & CO.

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

   One going about in public places or semi-public places when possessed of his natural faculties may not escape being charged with negligence if he is heedless of his own safety, and if he fails to use the care that an ordinarily careful person would have used in like surroundings, and in consequence sustains injury, he must bear his own misfortune.

2. SAME—ELEVATOR SHAFT—FAILURE TO LOOK—AUTOMATIC DOORS—STATUTES.

   Where elevator shaft was guarded by closed doors, and deliveryman who was familiar with surroundings, without first looking to see if platform was at that floor level, opened door to pass through, and fell into elevator shaft and was injured, he was guilty of contributory negligence barring recovery, notwithstanding owners of building were guilty of negligence in failing to have doors guarding said shaft which closed automatically, as required by statute (2 Comp. Laws 1929, § 8327).

Appeal from Washtenaw; Sample (George W.), J. Submitted April 5, 1933. (Docket No. 31, Calendar No. 37,078.) Decided June 5, 1933. Rehearing denied August 29, 1933.

Case by Edwin R. Blankertz against Mack & Company, a Michigan corporation, and others for personal injuries received by reason of defendants' alleged failure to maintain proper doors at an elevator opening. Judgment for plaintiff. Defendants appeal. Reversed.

*Burke & Burke* (*George M. Connor,* of counsel), for plaintiff.

*Bishop & Weaver* (*Stivers & Hooper,* of counsel), for defendant Mack & Company.

*Payne & Mellott,* for defendants Meyer.

NORTH, J. Plaintiff sustained serious personal injuries by falling down an elevator shaft in a commercial building at Ann Arbor, Michigan. Defendants Frederick C. Meyer and Flora M. Meyer are the owners of the fee to this property; Mack & Company are lessees under a 99-year lease; and the K. & M. Cash Hardware, a copartnership composed of Frederick C. Meyer and Oscar F. Knope, are subtenants. Plaintiff had judgment against all the defendants, and they have appealed. In the trial court it was urged, as it is now urged on this appeal, that the plaintiff was guilty of contributory negligence. The circuit judge found:

"That they (defendants) were guilty of negligence which was the sole and approximate cause of the plaintiff's injuries and resulting damages, the court finding as a matter of fact that there was no contributory negligence upon the part of the plaintiff."

The foregoing finding is assigned as one of the reasons in support of this appeal.

Plaintiff's case is based upon an alleged violation of 2 Comp. Laws 1929, § 8327, which in part reads:

"Openings, duty to inclose, manner, inspection. SEC. 12. * * * It shall be the duty of the owner, agent or lessee to provide or cause to be provided at all elevator openings in any manufacturing establishment, workshop, hotel or store, proper trap or automatic doors or automatic gates so constructed as to open and close by the action of elevators either ascending or descending."

Plaintiff was an employee of a trucking company and together with another employee delivered two parcels to defendants' building. In making such delivery they drove the truck into an alley and near an entrance at the rear of the building. This entrance is through a large metal sliding door of fireproof type located practically at the northeast corner. Immediately inside the building at this point is a hand-operated freight elevator, the shaft of which is approximately five and a half feet square. On the north and east sides the elevator shaft is inclosed by the outside building walls, the other two sides are inclosed by wooden partitions. Practically opposite the entrance from the rear of the elevator shaft is a substantial wooden door about three and a half feet wide, which opens into the rear portion of the K & M. Cash Hardware store. The hinges of the door are on its northerly side, so that when being opened the door swings into the interior of the store in a westerly and northerly direction. This door is equipped with an ordinary knob and catch, and when closed the southerly edge of the door is almost flush with the southerly wall of the elevator. In delivering their parcels the two employees passed through the door into the elevator shaft, across the elevator platform and through the wooden door into the store. At the time of their approach both doors were closed and the elevator platform at the first floor level. Plaintiff's companion placed his parcel on the floor of the store and immediately returned through the elevator shaft, closing the wooden door as he went out and also closing the outside door. At the time of the delivery the defendant Frederick C. Meyer was at the rear of the store and somewhat over to the southerly side. Plaintiff approached him for the purpose of securing his signature to a de-

livery receipt. At the time a traveling salesman was present, and some conversation passed between the three men. Mr. Meyer made some inquiry of plaintiff about freight rates for deliveries from Cleveland, and expressed an intention of giving plaintiff's company some business of this character. While this conversation was going on plaintiff started to leave the building, as he did so turning his head somewhat to the right, and he was still speaking to Mr. Meyer at the time he reached the door to the elevator shaft. There is testimony that plaintiff paused an instant at the door and said to Mr. Meyer "I will bring over an order for you to sign this afternoon." Plaintiff thereupon opened the door to the elevator shaft, stepping back slightly as he did so, and then went forward and fell to the bottom of the shaft, a distance of about eight feet. Obviously, while plaintiff was in the store, approximately two minutes, the elevator had been removed to one of the upper floor levels. As to how the accident happened, plaintiff testified:

"*Q.* * * * Have you any recollection that as you opened the door you had to step back?

"*A.* I think I stepped ahead.

"*Q.* How many steps did you take? One or more than one before you went into the opening?

"*A.* About one step.

"*Q.* That is, you step forward with one foot or the other. Did it strike something solid?

"*A.* No, I went into space.

"*Q.* So it was the first step you took?

"*A.* I didn't know where I was going.

"*Q.* Is this a fair statement? You stood on solid ground, opened the door and that was the last solid step you took?

"*A.* I think so, yes. * * * As I opened the door I fell into this hole; there was no platform there.

"*Q.* You stated it was dark and you could not see the lack of platform there?

"*A.* Yes, sir.

"*Q.* And when you opened the door that swings into the store you immediately step, either into this shaft, or onto the platform?

"*A.* Yes, sir."

Plaintiff had made deliveries at the store and passed through this elevator shaft on seven or eight previous occasions. He testified that he was in the habit of looking as he opened the door into the elevator shaft to see whether or not the elevator was there, and that when he entered the building on this occasion through the outside door he preceded his companion and looked to see whether the elevator was at that floor. The accident happened about 10 o'clock in the forenoon. The elevator shaft was lighted through a window in the north wall approximately two and a half feet square and located half way between the first and second floors. There was also a window in the south wall of the shaft which was about five feet by three. The longer dimension being parallel with the store floor and the lower edge approximately five feet above the floor level. Opposite or nearly opposite this window into the store room and within a few feet therefrom were two electric lights suspended from the ceiling of the storeroom. These lights were burning at the time of the accident. Plaintiff's fellow employee at the time of this delivery, Mr. Wilkie, testified in substance that as they went into the building the door opening into the alley was closed, and as he started to leave the building by the inside door opening there was enough light so that he could see that the elevator was in place. There was also testimony that the light in the elevator shaft, even when the electric lights were not burning in the store building,

was sufficient to disclose whether the platform was at the first floor level. Plaintiff testified:

"*Q.* Now, when you would come from the store into the elevator, you would look to see whether it was there or not?

"*A.* Yes, sir.

"*Q.* And if it was there you could always see it there, couldn't you? ·

"*A.* Yes, well—

"*Q.* There is no question in your mind?

"*A.* Well, if it was dark on the other side, you couldn't see so good as you could from the side on the alley.

"*Q.* Do you want the court to believe that it was so dark in there you could not see the elevator?

"*A.* Yes, sir.

"*Q.* You could not see the elevator?

"*A.* I could not see it; no.

"*Q.* In other words, you never looked to see whether the elevator was there or not, because you couldn't see it?

"*A.* I looked, yes, and the elevator appeared the same as when I went on the other side.

"*Q.* Then you could see it?

"*A.* ·The shaft looked the same, and I figured everything was the same as when I came in on the other side."

Admitting that defendants were guilty of negligence in failing to comply with the above-quoted statute, nonetheless we think it convincingly appears from this record that plaintiff was also guilty of negligence which was a contributing proximate cause of his misfortune. From the testimony it is almost an inescapable conclusion that, notwithstanding plaintiff knew from previous experience of this elevator shaft which was surrounded by a complete inclosure, he was thoughtless when leaving the store,

opened the door into the shaft, and, without looking to see if the platform was at that floor level, carelessly went forward into the opening. Appellee cites, and to some extent relies upon, several cases involving trap doors or open doorways into elevator shafts; but such is not the instant case. Here the elevator shaft was completely closed as plaintiff approached. Because of previous visits he knew of the elevator shaft, he had seen the elevator in use, and he was aware of the need of care in passing over it upon entering or leaving defendants' building. The inclosure itself was such that plaintiff should have been reminded by it of the need of exercising care. The situation is by no means comparable with an unguarded trap door or even with an elevator shaft to which the passageway is open. This latter condition was noted in the case of *Noack* v. *Williams, Davis, Brooks & Hinchman Sons,* 175 Mich. 15, cited and relied upon by appellee. The writer of that opinion pointed out that the undisputed evidence disclosed that the doors to the entranceway of the elevator shaft "were rolled away thus leaving an opening and no protection at the time."

This court is definitely committed to the holding that one going about in public places or semi-public places when possessed of his natural faculties may not escape being charged with negligence if he is heedless of his own safety. If he fails to use the care that an ordinarily careful person would have used in like surroundings, and in consequence sustains injury, he must bear his own misfortune. *Bedell* v. *Berkey,* 76 Mich. 435 (15 Am. St. Rep. 370); *Shorkey* v. *Great A. & P. Tea Co.,* 259 Mich. 450; *Garrett* v. *W. S. Butterfield Theatres, Inc.,* 261 Mich. 262; *Boyle* v. *Preketes,* 262 Mich. 629; *Grand Rapids Bedding Co.* v. *Grand Rapids Furniture Temple Co.,* 218

Mich. 486; *Rice* v. *Goodspeed Real Estate Co.*, 254 Mich. 49. The last-cited case is surely not more conclusive of plaintiff's contributory negligence incident to an elevator accident than the present case, and plaintiff's contributory negligence there barred recovery.

"We have found no case, however, holding that where the door to the shaft is only halfway open, so that the passenger entering is obliged to, and does, open it the rest of the way in order to enter, the question of contributory negligence is a matter of doubt; nor do we see how it could be so held." *Bremer* v. *Pleiss,* 121 Wis. 61 (98 N. W. 945).

If this elevator had been so equipped that the door through which plaintiff passed at the time of the accident would have closed automatically there would have been compliance by defendants with the statutory requirement. The protection afforded plaintiff would have been no greater by reason of the door having closed automatically rather than otherwise. In either event, it was impossible for plaintiff to walk into or fall into the elevator shaft without first opening the door that guarded the entrance thereto. As hereinbefore indicated, we are of the opinion that plaintiff was guilty of contributory negligence which bars recovery. The case is remanded to the circuit court with direction to enter judgment in favor of defendants. Costs to appellants.

McDonald, C. J., and Clark, Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred.