[Civ. No. 20487. Second Dist., Div. Three. May 10, 1955.]

MILDRED E. MAWHINEY, Appellant, v. SIGNAL TRUCKING COMPANY (a Corporation), Respondent.

Hahn, Ross & Saunders for Appellant.

Crider, Tilson & Ruppé and Elber H. Tilson for Respondent.

VALLÉE, J.—Appeal by plaintiff from a judgment of nonsuit in an action for the alleged wrongful death of her husband, Shelley Mawhiney.

Defendant, a trucker, operated an 11-acre depot for servicing and storing its trucks. Defendant hired Higbie as a contractor to connect gasoline storage tanks, which were buried about 9 feet underground, with pumps to be installed by defendant. Mawhiney was an employee of Higbie. Defendant and Higbie agreed that defendant would do the digging down to where the valves at the top of the storage tanks would be exposed and that when the digging was completed, Higbie would be notified and proceed with the work.

Defendant's employees dug the excavation which was in

the shape of a teardrop: about 15 to 20 feet long and varying in width from 4 to 8 feet. It was from 6 to 9 feet deep. At one end there was a 6-foot square concrete pit or box through the near wall of which the piping from the tanks was to be inserted so as to connect with the pumps. The entire area was fill. The surface consisted of about 3 inches of blacktop. Under this there was a 6-inch layer of decomposed granite followed by 2 or 3 more inches of blacktop. Below was fill material.

The excavation was completed and shoring was installed by defendant on March 31, 1952. The shoring consisted of four vertical 2-inch by 6-inch planks, each 4 or 5 feet long, placed on each side of the excavation; the vertical planks were placed about 3 feet apart and the top of each plank was about 6 to 9 inches from the top of the trench; on each side of the excavation a 2-inch by 6-inch plank was installed so as to run along the verticals; crosspieces or braces, 2 inches by 6 inches, were installed across the width of the trench so that each end butted against a vertical plank on each side of the trench; there were the same number of crosspieces as verticals; the crosspieces were cut long and driven into place with a sledge hammer so that the entire shoring was held intact. No sheeting was installed. Wilson, defendant's superintendent, frequently checked the progress of the excavation and inspected the shoring after it was finished.

On March 31 Higbie was notified the excavation was completed. He examined it and the shoring that day. The next day, Vickery, Higbie's foreman, and Oldfield, Higbie's employee, worked in the excavation connecting a pipe on the south side. The shoring remained in place all day. No loose dirt fell into the excavation. Wilson inspected the progress of the work about three times on April 1. When Vickery and Oldfield left at 4:30 p. m. on April 1, the shoring was intact as described above.

On the morning of April 2, Mawhiney substituted for Oldfield as Vickery's helper. When they arrived at the job they found that there was no shoring in the excavation; it had been entirely removed. There was no evidence as to who removed it. Neither man notified defendant the shoring was missing, nor did either of them request defendant to replace it. Vickery testified he asked Mawhiney to get him some boards and "we would put two temporary braces merely as safety, because it looked safe to me. I supervised and put them in myself, the two shoring boards that were installed

that morning"; they put up "safety timbers," not cribbing or shoring; they did not duplicate the cribbing or shoring that had been in there the day before; "whatever lumber or timber or bracing or whatnot was in the hole at the time that the accident occurred was put in there by" Vickery and Mawhiney; the timbers were "to keep this small stuff from coming down on your feet and legs, we weren't afraid of the place." The "safety timbers" described by Vickery were two 1-inch by 6-inch planks installed in a vertical position on each side of the east end of the excavation near the cement pit in which the pumps were to be installed, about 4 to 5 feet apart. Two 2-inch by 6-inch planks were installed as crosspieces between the vertical planks, and across the width of the hole. The crosspieces were not put in with a sledge hammer; they were pushed in by hand. The wood used by Vickery was found by Mawhiney outside the excavation. Neither Vickery nor Mawhiney asked anyone for additional shoring. They worked up to the time of the accident with the shoring just described.

Wilson visited the excavation for a few minutes during the morning of April 2. He did not notice anything different about the shoring; it appeared the same as it was the day before. Neither Vickery nor Mawhiney said anything to him about its having been removed.

The accident occurred about 12:45 p. m. on April 2. Before Vickery and Mawhiney started work after lunch, they checked the lumber in the hole and found it as they had placed it. At the time of the accident Vickery was inside the cement pit connecting a pipe to the pump; Mawhiney was in the excavation holding the pipe with a wrench. The first notice that Vickery had of the accident was the sound of wood breaking. He later found that the ladder, which was adjacent to the cement pit and adjacent to the temporary shoring, had broken as well as one of the 1-inch by 6-inch planks he had installed. He also found that a chunk of material about a cubic yard in size had broken from the north side of the trench from a point where his temporary shoring had been installed and had fallen on Mawhiney, causing his immediate death. The chunk consisted of the upper portion of the side of the excavation, the blacktop, decomposed granite, and other material above the fill.

It was stipulated that defendant's premises were fenced in, a night watchman was on duty, and only authorized persons were allowed on the grounds.

The nonsuit was granted on the ground there was no proof of negligence.

Plaintiff contends it was a question for the jury to decide whether defendant took the steps that could be reasonably expected of it to render safe the excavation in which Mawhiney was working.

Mawhiney was an invitee of defendant and it was its duty to use ordinary care to furnish him a reasonably safe place within which to work, or to warn of danger. (*Raber* v. *Tumin,* 36 Cal.2d 654, 658 [226 P.2d 574]; *Revels* v. *Southern Calif. Edison Co.,* 113 Cal.App.2d 673, 678-679 [248 P.2d 986]; *Oldham* v. *Atchison, T. & S. F. Ry. Co.,* 85 Cal.App.2d 214, 218 [192 P.2d 516].) Where the dangerous condition was brought about by natural wear and tear, or an act of a third person, or an act of God, or by a cause which was not due to the negligence of the owner or his employees, then to impose liability on the owner he must have had either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to have discovered the condition which, if known to him, he should have realized as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it. (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841].) The owner of property is not an insurer of the safety of his invitees. He becomes liable for their injuries suffered on his property solely by reason of his superior knowledge of the existing danger to invitees who may enter his grounds while in ignorance of the peril. (*Perbost* v. *San Marino Hall-School,* 88 Cal.App.2d 796, 803 [199 P.2d 701].) A recovery cannot be had when the owner or occupant has no knowledge of the danger, where the plaintiff had such knowledge, where the danger is obvious, or where the plaintiff is guilty of contributory negligence. (*Solen* v. *Singer,* 89 Cal.App.2d 708, 714 [201 P.2d 869].) An invitor is not required to give an invitee warning or notice of obvious danger but is entitled to assume that the invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. (*Delk* v. *Mobilhomes, Inc.,* 118 Cal.App.2d 529, 532 [258 P.2d 75].)

Defendant concedes it had the duty to exercise ordinary care to provide Mawhiney with a reasonably safe place to

work. It claims it did so; that when it turned the excavation over to Higbie on April 1, the hole was in a reasonably safe condition for the performance of the work to be done by Mawhiney and other laborers.

 Plaintiff and defendant agree that it was defendant's duty to install shoring in the excavation. Defendant did shore the trench; whether this shoring was adequate is not material because it was removed before the accident. The sufficiency of defendant's shoring is a moot question; no one can say whether the accident would have occurred if it had remained in the excavation. Plaintiff argues that "the removal of the shoring must have been done" by defendant's personnel because defendant's premises were fenced in, a watchman was on duty, and only authorized personnel were allowed on its grounds. On the basis of this assumed inference, she then claims it may be presumed that defendant had notice of the dangerous condition of the trench and that it consequently had the duty to restore sufficient safeguards to protect invitees.

Plaintiff's assumed inference as to who removed the original shoring is mere speculation. There is no evidence as to the identity of the persons who removed the shoring. The record is void of any such evidence. Only Vickery, Mawhiney, and the witness Gater, who was an employee of an electric company that had a maintenance contract with defendant and who was working near the excavation on the day of the accident, knew of the removal of defendant's shoring material; but none of them brought this information to the attention of defendant. When Wilson stopped at the trench the shoring installed by Vickery and Mawhiney was in place; it appeared the same as it was the day before; and he did not notice any difference. Neither Vickery nor Mawhiney said anything to him about the removal of the original shoring. Plaintiff does not contend that defendant received notice of the removal of its shoring through Wilson's visit to the excavation, after Vickery and Mawhiney had installed "safety timbers," the morning of April 2. She asserts the shoring installed by Vickery and Mawhiney was substantially the same as that originally constructed by defendant. If the substituted shoring was the same as that installed by defendant, it cannot be reasonably inferred that Wilson would have been able to detect the difference during the short time that he visited—he did not come to inspect—the excavation. There was no evidence that defendant or any

of its employees had notice, actual or constructive, of the dangerous condition of the excavation prior to the accident.

Plaintiff further contends defendant was negligent as a matter of law. She claims defendant did not comply with the specifications of sections 8110 to 8112 of the Administrative Code relative to sheet-piling and shoring, and that violation of these safety orders constitutes negligence *per se*. This contention ignores the fact that none of defendant's shoring was in the trench at the time of the accident. If defendant's shoring had remained in the excavation and it had collapsed, then the question of compliance with safety orders and the construction of shoring in accordance with sound practices would have been material factors in this case. If it be assumed that defendant's shoring was constructed in violation of the safety orders, this would not establish liability on the part of defendant. ■ An action for damages may not be founded upon negligence arising out of the violation of a statutory duty, unless such violation is a proximate cause of the injury. (*Sweet* v. *Los Angeles R. Co.*, 79 Cal.App.2d 195, 200 [179 P.2d 824]; *Friedman* v. *Pacific Outdoor Adv. Co.*, 74 Cal.App.2d 946, 951-952 [170 P.2d 67]; 19 Cal.Jur. 636, § 67.) The faulty shoring which caused the accident was installed by Vickery and Mawhiney, Higbie's employees, not by defendant.

■ The evidence was insufficient to warrant submission of the question of negligence to the jury.

■ Plaintiff claims the court erred in sustaining defendant's objection to a hypothetical question she asked her expert witness. The purpose of the question and of plaintiff's offer of proof was to show that the shoring installed by defendant was inadequate. There was no error. As we have seen, the adequacy of defendant's shoring was immaterial. The accident was not caused by reason of the inadequacy of that shoring. The opinion of the expert would have been material only if defendant's shoring had been in the excavation at the time of the accident and had given way.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.