[Civ. No. 5651. Fourth Dist. May 2, 1958.]

PHIL H. PHILIPS, Respondent, v. SUN-BEST FRUIT DISTRIBUTORS (a Partnership) et al., Appellants.

Hanna & Brophy, Hays & Hays and James N. Hays for Appellants.

Lopez & Hyde and Floyd H. Hyde for Respondent.

GRIFFIN, J.—Plaintiff-respondent brought this action for personal injuries resulting from a fall into a conveyor gutter or trench in a building under construction. At the time and place defendant-appellant Rockie Gamber (referred to in the pleadings and testimony as Rocky or Rock and hereinafter referred to as Gamber) individually and doing business as Gamber Construction Company, was supervising the construction of a fruit-processing shed for the defendant-appellant Sun-Best Fruit Distributors, a copartnership (hereinafter referred to as Sun-Best). It is alleged plaintiff's injuries were the proximate result of the negligence of all defendants. By answer defendants denied this allegation and alleged contributory negligence on the part of plaintiff and that he assumed the risk.

The facts show generally that prior to July 20, 1954, Gamber was employed by Sun-Best, which was the owner of the real property. Sun-Best agreed with Gamber that he would be paid a fixed fee for supervising and running the job of constructing a fruit-processing shed. Gamber testified this arrangement was not a contract on a bid basis or for cost plus a fixed percentage. He was to supervise the construction and obtain bids from subcontractors. Bids were submitted to Sun-Best. It determined which subcontractor was to obtain the job. Plaintiff Philips, aged 46, prior to this job, had been a salesman for Drake Steel Company. Shortly prior to July 20th, Gamber and plaintiff discussed the possibility of Gamber getting this contract. Plaintiff suggested he contact Abco Company, a steel fabricator, and introduced Gamber to its president. That company's bid obtained the contract to fabricate and erect the steel in the building. Plaintiff received an order from Abco Company for the steel required. He advised the fabricator and the contractor as to the kind of steel that was available, but had nothing to do with the plans and specifications or supervising of the work. During the course of construction plaintiff met Gamber on several occasions in a restaurant across the street from this building to advise him on the availability of certain items of steel or to tell him of the progress of the fabrication at the Abco Company plant. He said he was sort of a liaison between the contractor and fabricator.

The building was of concrete blocks. The floor was poured concrete over a compacted fill 140 by 60 feet, creating a floor level about 48 inches above the original ground level. A gutter or trench for a conveyor, 32 inches wide and from 18 to 30 inches in depth was left open in the floor surface. The east-west gutter commenced near the east wall and ran west for about 30 feet. It then made a right-angle turn and ran to the north wall and out of the building. . Near the turn was a pit or sump deeper than the gutter. The roofing to the building had not been placed. On July 20th plaintiff received a message to meet Gamber and a Mr. Smith of the Abco Company at the building. Plaintiff said he had never been in the building before. When he arrived, Gamber was seated in a car parked across the street from the building. According to plaintiff's story, Gamber asked plaintiff if he would check the steel in the building and see what he thought of its erection. Without going inside, he noticed some frame-

work out of line and told Gamber about it. Gamber suggested that plaintiff check with one Naden, job superintendent for Abco Company inside the partially completed building. Plaintiff, according to his testimony, entered by a doorway on the south end, walked northwesterly to a point where he said he found a lot of things in his way, such as a truck, wheelbarrow, pile of brick, sand and mortar, empty sacks and debris; that he noticed a board across the east-west gutter in the floor; that it was his understanding that a conveyor was to be placed there; that it was 3 feet wide by 3 feet deep,—deep enough for him to fall into on his return trip; that from there the trench extended both to his right and to his left, how far he could not guess; that before going to the crossing, somewhere near the middle of the floor he observed a trench and thought the debris was covering it; that he could not step across the gutter at that point so he continued west over to the board crossing; that he walked across the board and then saw Naden on top of the north wall near the northeast corner; that he walked over and told him he thought the girders forming the canopy were crooked and Naden informed him they would straighten out when properly tightened down; that at Naden's request he examined other girders on his way out of the building; that while he was walking south from that point toward the south end of the building he was looking up at the girders and fell into the east-west gutter between the center and the east side of the building and was severely injured; that there was considerable debris along this route and near this point; and that the pit or trench there was hidden by debris so he could not see it. He later testified he did not fall over any of the debris because he had a clear path and did not see the hole because he was looking at the trusses overhead; that from the time he entered the building until he fell he had only crossed one trench; that he did not know the other trench existed until he fell into it; that the reason he did not see the trench was because he was looking at the trusses and not because of the debris; that had Naden not asked him to inspect the girders he would have been looking where he was going on his way out; and that he later heard Gamber say: ''We should have covered it, that excavation, last week when a brick mason fell into a hole on the other side of the building.''

Naden testified he told plaintiff, on his way out, to look and see how straight the steel purlins on the trusses were on the southern end which was completed; that he did not there-

after observe plaintiff until he fell; that there was a pile or two of bricks around but he did not recall seeing the debris material described by plaintiff.

Gamber testified plaintiff had been in the building two or three times prior to July 20th; that he did not remember telling plaintiff to go into the building on that date and probably did not ask him to look at the steel work; that the pit at the west end of the gutter was completely covered with boards, and planks had been spread across the gutter at intervals to walk across but no barricades had been placed around the gutter; and that when he entered through the south door that morning both the east-west and north-south trenches were perfectly visible. Other witnesses so testified and stated that the plaintiff's pictures of a trailer and papers covering, to some extent, the gutter near the place where plaintiff fell, which pictures were subsequently taken, were not true pictures of conditions as they existed on July 20th; and that there was nothing blocking or obstructing plaintiff's view as he approached the trench from the north just before he fell. The evidence further shows that one of defendant partners of Sun-Best would go to the job, possibly daily, to see how it was progressing, ask questions of Gamber, inspect the completed work and see if it was satisfactory. The plans for the building were prepared for Sun-Best by a registered civil engineer obtained by Gamber. Upon this evidence a jury found in favor of plaintiff and against both defendants for $10,000. They filed separate notices of appeal.

Gamber now claims (1) That the evidence is insufficient to show negligence on his part; (2) That the contributory negligence of plaintiff was established as a matter of law; (3) That the evidence showed plaintiff assumed the risk; and (4) That the court erred in giving and refusing certain instructions.

■ As to the first, second and third claims it is argued that since the jury impliedly found plaintiff to be an invitee his rights must be determined by the four tests of recovery set forth in *Solen* v. *Singer,* 89 Cal.App.2d 708, 714 [201 P.2d 869], i.e., a recovery cannot be had when the owner or occupant has no knowledge of the danger, where the plaintiff has such knowledge, where the danger is obvious, or where the plaintiff is guilty of contributory negligence, citing *Mawhiney* v. *Signal Trucking Co.,* 132 Cal.App.2d 809, 813 [283 P.2d 27] ; and *Nagle* v. *City of Long Beach,* 113 Cal.App.2d 669, 671 [248 P.2d 799]. ■ There is sufficient evidence to show that plaintiff was an invitee of defendant Gamber at the

time of the accident. Obviously, the invitation to enter the building and discuss the steel work with an employee to the rear of the building necessarily implies that the invitee, after discussing the matter, would have to leave the building and the invitation would naturally extend to any portion of the premises by which he might reasonably be expected to leave. (35 Cal.Jur.2d p. 657, § 140; *Stewart* v. *Lido Café,* 13 Cal. App.2d 46, 50 [56 P.2d 553]; *Gastine* v. *Ewing,* 65 Cal.App. 2d 131, 141 [150 P.2d 266]; *Pierson* v. *Holly Sugar Corp.,* 107 Cal.App.2d 298, 302 [237 P.2d 28].)

It is true that there are several inconsistencies in plaintiff's testimony as to his conduct, what he saw by way of debris, and the reason he fell into the trench. In support of the verdict we must assume the jury adopted that evidence which was most favorable to plaintiff, even though it was in conflict. (4 Cal.Jur.2d 481, 482, § 602; *Sherman* v. *Kirkpatrick,* 83 Cal.App. 307, 311 [256 P. 570].) It may be well said that had the jury found that plaintiff was guilty of contributory negligence, as alleged, the evidence produced would have supported such a finding, but it cannot be said that plaintiff was guilty of contributory negligence as a matter of law. There is evidence that there was certain debris and materials scattered about the immediate vicinity of the gutters, and some may have obscured, to some extent, plaintiff's vision of the open and uncovered gutter or trench in the center and on the easterly side of the building. The evidence would support a finding that plaintiff's attention had been distracted by Naden in suggesting that plaintiff observe the overhead steel beams on his way out of the building and if plaintiff did have knowledge of the length of the trench which he observed on his way in, his attention to it was momentarily distracted from it. It is, of course, true that plaintiff was under a duty to look where he was going and to observe that which was in plain sight in front of him. (*Curland* v. *Los Angeles County Fair Assn.,* 118 Cal.App.2d 691, 695 [258 P.2d 1063].) Whether a person, under the circumstances, made a reasonable use of his faculties and whether the danger was obvious, generally, are questions for the jury. It is also the rule that an invitor is not required to give an invitee warning or notice of an obvious danger but is entitled to assume that the invitee will see that which would be obvious to him upon the ordinary use of his own senses, and that one who enters an uncompleted building takes the risk of using the premises in the condition in which he finds them. (*Ma-*

*whiney* v. *Signal Trucking Co.*, 132 Cal.App.2d 809, 813 [283 P.2d 27] ; *Allen* v. *Jim Ruby Construction Co.*, 138 Cal.App. 2d 428, 434 [291 P.2d 991].) ▮ Whether plaintiff's action was reasonable and prudent under the circumstances was a question for the jury to determine. ▮ Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the jury. ▮ There was sufficient evidence of defendants' negligence to submit the question to the jury. (*Neel* v. *Mannings, Inc.*, 19 Cal.2d 647 [122 P.2d 576] ; *Atherley* v. *MacDonald, Young & Nelson, Inc.*, 142 Cal.App.2d 575 [298 P.2d 700] ; *Wills* v. *J. J. Newberry Co.*, 43 Cal.App.2d 595 [111 P.2d 346] ; *Louie* v. *Hagstrom's Food Stores, Inc.*, 81 Cal.App.2d 601 [184 P.2d 708] ; Art. 14, § 1571, subdivisions (a), (b) and (c) California Administrative Code.) For the same reasons expressed the evidence does not show, as a matter of law, that plaintiff assumed the risk, as pleaded by way of defense. (*Ostertag* v. *Bethlehem Shipbuilding Corp.*, 65 Cal.App.2d 795, 803 [151 P.2d 647].)

▮ Article 14 [tit. 8], section 1571, subdivisions (a), (b) and (c) of the California Administrative Code, which was a construction safety order then in effect (see Cal. Admin. Code, §§ 1501 and 1620, published by the Division of Administrative Procedure), was given as an instruction to the jury, with the exception of the "Note" indicated. It reads:

"Article 14. Floor Openings to Be Guarded.

"1571. (a) As soon as the hole is framed all floor or roof openings within a building or other structure during the course of construction, alteration or repairing, shall be covered with planks so as to carry safely any load which may be required to be supported thereon or it shall be fenced in on all sides by a standard railing.

"Note.—'As soon as the hole is framed' means when the header beams are nailed to the joist and before the sheathing is laid.

" (b) If any runway or scaffold is built across any floor opening, the entire opening shall be completely planked over or otherwise the said runway or scaffold shall be provided with a standard railing and toeboard.

" (c) All planks, railings or barriers guarding floor openings shall be left in place until such openings are permanently protected, or the permanent protection is being installed. The temporary protection shall be removed only as the permanent protection is installed."

The court then instructed the jury: "These orders, of which the courts take judicial notice, are now considered to be in evidence to be weighed by you in arriving at your decision as to whether the defendants or any of them have been negligent toward the plaintiff."

Defendants argue such instruction (1) Was not applicable to the facts of the instant case; (2) Was not complete because the court omitted reading the "Note" above mentioned to the jury, defining the meaning of the term "As soon as the hole is framed"; (3) That section 1620, *supra,* now clearly defines what was meant by the provisions of section 1571, and accordingly its provisions could not be interpreted as requiring a cover for a trench or hole in the floor, as here described; that accordingly, the jury was given an erroneous yardstick by which it was to determine the negligence of the defendants. The "Note" defining the term used, might well have been given as being the interpretation placed thereon by the Division. However, we do not believe this omission was prejudicial. It applies only to paragraph (a). Paragraph (b) provides that if any runway is built across "any" floor opening, the entire opening shall be completely planked over. The application of the safety order to the facts produced was, under the instruction, left to the determination of the jury in deciding the question of negligence. The order, as read, was admissible for this purpose. (*Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846 [313 P.2d 854]; *Pierson* v. *Holly Sugar Corp., supra.*)

Contrary to defendants' claim that plaintiff was not a member of the class for whose protection the order was designed, i.e., employer-employee relationship—we are convinced it had application to plaintiff as an invitee. The court, in *Porter* v. *Montgomery Ward & Co., Inc., supra,* after discussing the conflict in the cases on this point, sustained our holding in *Pierson* v. *Holly Sugar Corp.,* and overruled a contrary holding in *Douglas* v. *Maloney,* 105 Cal.App.2d 284 [233 P.2d 59]; and *Neuber* v. *Royal Realty Co.,* 86 Cal.App. 2d 596 [195 P.2d 501], cited by defendants.

A more serious question arises as to the claimed error in giving plaintiff's proffered instruction on "momentary forgetfulness," as modified by the court. It reads: "If you find that a defect existed in the premises in question which was dangerous, obvious and patent, and that plaintiff had knowledge thereof, you are instructed that if the plaintiff momentarily forgot the same, such forgetting is not in itself

contributory negligence unless it shows a want of ordinary care on his part.'' Judging from plaintiff's testimony, the claim that plaintiff knew of the dangerous defect in the premises and momentarily forgot it, is somewhat lacking in evidentiary support. It has been often held that the giving of an instruction where there is no evidence to support it, though proper in form, is error. (*Fletter* v. *City & County of San Francisco,* 110 Cal.App.2d 820, 824 [244 P.2d 59] ; 24 Cal.Jur. p. 830, § 95.) There is evidence that plaintiff did see, at least some portion of the open trench, when he deviated his course and crossed the trench by means of a board ramp. No doubt this same trench did exist across to the easterly portion of the building and was the one which involved him on his exit from the building. It was not covered by planks. There is some evidence it was, to some extent, covered with debris and papers. The jury might reasonably imply that if plaintiff did see it he had forgotten about it and his attention was momentarily attracted elsewhere. Under the instruction, as modified, the trial court stated to the jury that *if it finds* certain facts to exist and *if plaintiff* momentarily forgot, then the rule would apply. It has been held, under similar circumstances, that it was not prejudicial error to give such an instruction where the question of its application was left to the jury. (*Fidelity etc. Co.* v. *Paraffine Paint Co.,* 188 Cal. 184 [204 P. 1076] ; *Lay* v. *Pacific Perforating Co.,* 62 Cal. App.2d 233 [144 P.2d 395] ; *Neel* v. *Mannings, Inc.,* 19 Cal. 2d 647 [122 P.2d 576] ; 24 Cal.Jur. p. 842, § 101, and cases cited.) We conclude that no prejudicial error resulted from the giving of this instruction.

 Defendant Sun-Best raises many of the same points here discussed. In addition, it argues that certain instructions given the jury, in effect, assumed the existence of control over the premises in this defendant, and effectively withdrew from the jury the issue as to whether the building was being constructed by Gamber, as its agent or as an independent contractor, and accordingly the court erred in refusing to give a special interrogatory to the jury on that question. We have examined the instructions given on this subject. Suffice it to say the court, at the request of Sun-Best, defined the terms ''independent contractor'' and ''agent.'' It concluded with the statement: ''If you find that at the time of the accident involved in this case Gamber Construction Company was an independent contractor, you cannot hold Sun-Best Fruit Distributors on the theory that Gamber Construction Com-

pany's acts or omissions were the acts or omissions of Sun-Best Fruit Distributors.''

This was followed by plaintiff's instruction: ''When an unsafe condition which causes injury to an invitee has been created by the owner or occupier of the property himself, or by an employee of such owner or occupier in the scope of his employment, the invitee need not prove such owner's or occupier's notice or knowledge of the dangerous condition. Such knowledge is imputed to the owner or occupier of the premises.''

The claim is that this instruction ignores the matter of control. The instruction as to the definition of an agent, fully set forth the fact that before Gamber could be found to be an agent the agent must first be found to be subject to the orders and control of the principal as to details of the work. The court then instructed as to the distinction of liability between a principal and agent and that of an independent contractor, and concluded with the statement that one who merely employs an independent contractor is not liable to others for his negligence; that the liability of each defendant must be considered separately and that the instructions given were to govern the case as to each defendant only insofar as they were applicable. The instructions, when considered as a whole, sufficiently covered the subject matter. No prejudicial error resulted in failing to order a separate and special interrogatory on the issue of agency and independent contractor, the giving of such an instruction being a discretionary matter with the trial court. (*King* v. *Schumacher*, 32 Cal.App.2d 172 [89 P.2d 466].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.