Richard F. GUGEL, Sr., Plaintiff-
Appellee,

v.

SEARS, ROEBUCK & COMPANY, a New
York Corporation, Defendant-
Appellant.

No. 14689.

United States Court of Appeals
Sixth Circuit.

Aug. 31, 1962.

Shackelford Miller, Jr., Chief Judge,
dissented.

James K. Brooker, Bay City, Mich., for
appellant, Smith, Brooker & Harvey, Bay
City, Mich., Kahn, Adsit & Arnstein,
Chicago, Ill., on the brief.

Peter F. Cicinelli, Saginaw, Mich., for
appellee, Eugene D. Mossner, Irving M.
Hart, Saginaw, Mich., on the brief.

Before MILLER, Chief Judge,
WEICK, Circuit Judge, and STARR,
Senior District Judge.

STARR, Senior District Judge.

The plaintiff-appellee began this action
in the circuit court of Saginaw County,
Michigan, to recover damages resulting
from his personal injuries sustained
when he fell into an open grease pit in
defendant-appellant's service garage,
maintained in connection with its retail
store in the city of Saginaw. The action
was removed to the Federal court on the
basis of diversity of citizenship and ju-
risdictional amount involved. It was
tried to a jury, which returned a ver-
dict for plaintiff in the amount of $7,850,
upon which judgment was entered. De-
fendant-appellant appeals, contending
that the district court erred in denying
its motion for a directed verdict and sub-
mitting to the jury the questions of its
negligence and plaintiff-appellee's con-
tributory negligence, and also erred in
denying its motion for judgment not-
withstanding the verdict. The parties
will hereinafter be referred to as plain-
tiff and defendant.

The facts relating to this accident may briefly be stated as follows: On January 24, 1959, at about 1:30 in the afternoon the plaintiff went to defendant's retail store in Saginaw to purchase a television set, parking his car on the street beside the store. When he returned to his car, he was unable to start it because the battery was dead. He then went to defendant's service garage adjoining its store to obtain help in starting it.

There were four open grease pits for the lubrication of cars, located in about the center of the service garage, arranged and spaced as shown in plaintff's exhibit 1 attached hereto. Each of the pits was about 6 feet deep, 15 feet and

11 inches long, and 42 inches wide, and around the edge of each pit was a steel rim painted red, extending about 4 inches above the surface of the floor. The areaway or distance between the sides of pits 1 and 2 and between the sides of pits 3 and 4 was 72⅝ inches, and the distance between the ends of pits 1 and 3 and the ends of pits 2 and 4 was 49 inches. The service garage was about 81 feet long, 42 feet wide, and 12 feet high, and was lighted by 15 to 20 300-watt light bulbs hanging about 6 inches below the ceiling. Each of the grease pits was lighted from within by several 150-watt light bulbs. When plaintiff entered the service garage, there were cars over all four grease pits.

He explained his car trouble to the defendant's auto-accessories manager, Mr. Buckingham, and was advised that as soon as a mechanic, James Dorr, finished working on the car over pit 1, he would assist plaintiff in starting his car. Plaintiff followed Mr. Buckingham between the ends of pits 1 and 3 and then to the north between pits 1 and 2 to about the front of the car over pit 1, where he was introduced to Dorr, and arrangements were made for Dorr to assist him. Plaintiff stood beside pit 1 for 10 or 15 minutes, during which time he talked with the owner of the car being serviced in that pit. Then, with mechanic Dorr leading him, he walked south between pits 1 and 2, and just before he reached the end of pit 1, he fell into it and was injured.

Plaintiff claims that the defendant was negligent, *first*, in failing to keep the service garage adequately lighted; *second*, in failing to keep the grease pits properly guarded by the use of chains, guard rails or other protective device; and *third*, in the failure of defendant's employee to lead him along a safe course or path while traveling through the service garage.

At the close of plaintiff's proofs, and again at the close of all proofs, the defendant moved for a directed verdict in its favor on the ground that plaintiff had failed to prove negligence on its part, and on the ground that plaintiff was guilty of contributory negligence as a matter of law. The trial court took these motions under advisement and submitted the case to the jury, which returned a verdict for plaintiff of $7,850. The defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. In its brief defendant states that it withdraws its motion for a new trial.

We must examine the testimony and determine whether the trial court erred in submitting to the jury the questions of fact as to defendant's negligence and plaintiff's contributory negligence. Plaintiff was 55 years old and testified that although he had had cataract operations on both eyes, his vision with glasses was normal. He further testified as follows:

"Q. Now, did you see any car occupying these four pits drive away from the pit?

"A. Yes, from the pit No. 1.
* * *

"Q. * * * After car No. 1, occupying pit No. 1, left, what happened?

"A. Well, after Mr. Dorr closed the (garage) door, he says, 'Come on, Mr. Gugel, I will now see if I can get your car started.' So he proceeded to lead the way and I followed him. * * * We were standing about here.

"Q. For the record, you are showing a point equidistant between the two pits, Nos. 1 and 2; at their most northerly point?

"A. That's right. I was probably standing a little bit farther towards the middle of the car than up here. We proceeded south to where a walk goes towards the west. * * *

"Q. * * * Were you together?

"A. He was ahead of me. * * * Three or four feet * * * I was following him, and as we got to the corner here, I just landed in the pit at the bottom. I don't know what happened.

"Q. * * * Could you describe to the jury the condition of the floor area between these two pits, 1 and 2, that you and he (Dorr) were walking south on?

"A. It was wet—they were wet, with ice and water that was on the floor.

"Q. How would you describe the lighting generally, that is, how was it lighted there?

"A. Well, I would say it was dim."

Plaintiff further testified on cross examination:

"Q. Now, you, at that time, saw this pit there?

"A. Yes.

"Q. And you saw this raised little rim around it?

"A. Well, it was kind of dim in there, and the floor was wet, and everything was camouflaged there. * * *

"Q. And do you know about how close you were walking to the edge of the pit?

"A. Oh, I would say about the center of the aisle. * * *

"Q. * * * You, of course, realized there was a pit over here and pit No. 2 also?

"A. Yes, and there was a car on it.

"Q. Yes. But you knew that there was a pit there, and, of course, you knew that there was a car over pit No. 3?

"A. Yes.

"Q. You had seen that when you walked in, I assume?

"A. Yes.

"Q. And you had plenty of room to get by the end of this car, did you not, as you walked in with Mr. Buckingham?

"A. Yes, we got through all right.

"Q. You didn't scrape up against the car, did you?

"A. Well, I don't recall.

"Q. But then you proceeded to walk south and then you were about in the middle there, the middle of this areaway between the two pits, pits 1 and 2?

"A. * * * Yes, in the center, walking towards the south. * * * In the center of the area between 1 and 2. * * *

"Q. And the next thing you knew you were falling in the pit?

"A. That's right. * * * I don't know what happened. I know my feet were involved in it, and I went down into the pit."

A mechanic employed by defendant testified regarding lighting in the service garage as follows:

"Q. * * * How is the garage lighted, Mr. Kwaiser?

"A. By single bulbs in the ceiling.

"Q. And do you know what the size, wattage of those bulbs were at that time?

"A. Yes. * * * 300 watts. * * *

"Q. Now, what is your best estimate as to how many of them there were?

"A. Fifteen to twenty.

"Q. Now, these pits that are open, do they have any lights in them?

"A. Yes, they do. * * *

"Q. * * * What do you say to the amount of light that the ceiling lights provided for this garage space? Was it bright or dim or how?

"A. I would say it was sufficient.

"Q. Well, by 'sufficient,' what do you mean? Sufficient for what?

"A. For working on automobiles. * * *

"Q. * * * But was it sufficient so that you could lift up the hood of an automobile and work on a battery without any * * * other aid?

"A. Yes.

"Q. And could you discern objects from one end of the building to the other end?

"A. Yes."

James Dorr, the mechanic who was directed to assist plaintiff in starting his car, testified regarding the accident as follows:

"Q. * * * When did you see him (plaintiff) and where was it?

"A. It was on the west end of the pits, your pit area. Mr. Buckingham, which is our auto accessories manager, brought him over and introduced him to me, or he introduced the fact that he needed some assistance with his car, needed to have the battery jumped so he could get it into the service station. Trouble starting the car. * * *

"I said, 'If you will follow me, I will go out and try to get your car started for you.' * * *

"We proceeded going south here, towards the south end of the building, down through, in between the two pits, 1 and 2, and made a right hand turn going over to the open area where we keep the batteries so I could get the jump cable to get him started.

"Q. That would be, for the record, a west direction?

"A. Turned right, to go west.

"Q. * * * What did you see or hear that you can tell the jury with reference to the accident?

"A. When I got across this island over to the open space, I looked back over my shoulder to see if Mr. Gugel was following me. * * * And at the time I looked back is when I saw him start to fall. * * * And it looked to me when he was falling he was trying to break his fall by grabbing hold of the western side of pit No. 1. * * *

"Q. * * * Now, then, the space between the southerly end of pit No. 1, where Mr. Gugel fell in, and the north edge of pit No. 3 is partly occupied by the front of that Ford, is it not? * * *

"Witness, could you, as closely as you can, tell the jury approximately * * * how many inches there was, in space, between the end of pit No. 1—that would be the south end—and the front of the bumper of the '57 Ford sitting on pit No. 3? * * *

"A. I would say approximately three feet."

Plaintiff's witness John LaDronka, a customer of the defendant, whose car was being serviced over pit 4 in the defendant's garage, testified in part:

"Q. * * * As closely as you can recall, when you first saw Mr. Gugel, can you tell us where you were standing?

"A. * * * I was standing northeast corner of pit No. 4, facing west. * * *

"Q. * * * What was he doing at that time?

"A. Oh, he was standing talking to some guy. * * *

"Q. * * * Did you or Mr. Gugel move from those positions?

"A. Well, Mr. Gugel did, but I stayed right at the same spot.

"Q. * * * Could you tell us what you saw Mr. Gugel do? * *

"A. * * * As I stood here, looking west towards the store, my car was on pit No. 4 being serviced. * * * I could see Mr. Gugel. * * As the attendant opened the door for this car on No. 1 pit to proceed out of the garage, the way I saw it, the attendant came back down between pit No. 1 and No. 2 in a southerly direction, and as the attendant turned west to head towards the store, Mr. Gugel was * * * following him. In the process, at the instant the car proceeded to move forward off of the pit, as Mr. Gugel came around this corner of—that would be the southeast corner of pit No. 1, and Mr. Gugel appeared to me,

as he came around the corner of the * * * rear fender of the car, appeared to stick his hand out, and at that instant the car was moving away, and, of course, that is when I saw him stub his right toe on the corner of the pit, and fall at an angle into the pit. * * *

"Q. There is no question you saw Mr. Gugel trip his right foot up against this rail, guard rail or flange?

"A. That is right, sir."

As the accident involved in this case occurred in Michigan, the rights and liabilities of the parties must be determined under the law of that State. Plaintiff first claims that the defendant was negligent in failing to keep its service garage adequately lighted and that its negligence was the proximate cause of plaintiff's injuries. Plaintiff testified that at the time of the accident the floor between pits 1 and 2 was wet with ice and water; that the light in the garage was dim and that everything was camouflaged. One of defendant's mechanics testified that the light in the garage was sufficient for working on automobiles and that objects could be discerned from one end of the building to the other.

Webster's New International Dictionary (2d ed., unabridged) defines "dim" as "not bright or distinct; wanting luminosity or clearness, darkish; * * * not clearly visible; indistinct."

In Grover v. Simons, 342 Mich. 480, 70 N.W.2d 775, 66 A.L.R.2d 325 (1955), the plaintiff's decedent fractured his leg when he fell through an open trap door in the floor of the rest room in defendant's restaurant. Witnesses for plaintiff testified that the light in the rest room was dim. The defendant claimed that the rest room was brightly lighted. The jury returned a verdict for plaintiff, and the trial court granted defendant's motion for judgment notwithstanding the verdict. In reversing the trial court and reinstating the verdict for plaintiff, the Supreme Court of Michigan said, pages 485, 486, 70 N.W.2d page 777:

"There was thus a direct conflict in the testimony. The matter of lighting conditions was obviously important as bearing on the alleged negligence of defendant, and also on the claimed contributory negligence of Mr. Phippard (decedent). The issue was one for determination by the jury, which evidently resolved it in favor of plaintiff's claims."

In Saddler v. Bethel Markets, Inc., 3 Cir., 267 F.2d 805, the plaintiff described the parking-lot area in which she fell as "dim." The plaintiff obtained a verdict, and the district court granted defendant's motion for judgment notwithstanding the verdict. In reversing the district court the appellate court said, page 807:

"It was for the jury to consider whether this dimness, the in between condition described by the witness as being neither light nor dark, constituted inadequate illumination."

In Falen v. Monessen Amusement Co., 363 Pa. 168, 69 A.2d 65, 14 A.L.R.2d 775, the plaintiff was injured when in the evening she fell in the defendant's theater parking lot. She alleged that the defendant was negligent in not adequately lighting the lot. In affirming a judgment for the plaintiff the Supreme Court of Pennsylvania said:

"Between light and darkness there are varying degrees or shades of light whereunder a question of contributory negligence, because of a failure to see distinctly, necessarily becomes a matter for a jury to determine."

Other authorities holding that the question of whether or not premises are adequately lighted is a question for jury determination are: Wilson v. Holland, 96 Ga.App. 679, 101 S.E.2d 97; Acme Markets v. Remschel, 181 Va. 171, 24 S.E.2d 430, 434; Paepcke v. Sears, Roebuck & Co., 263 Wis. 290, 57 N.W.2d 352, 355. See also Matt Skorey Packard Co. v. Canino, 142 Colo. 411, 350 P.2d 1069.

It may be noted that in the recent case of Schulte and Bruns v. Great Lakes Stevedoring Corporation (decided April 5, 1962), 6 Cir., 300 F.2d 897, the Court of Appeals for this circuit said:

"The general rule is that if any substantial evidence supports a claim the issue is for a jury. This is the rule in the Sixth Circuit. Scott v. United States, 161 F.2d 1009, 1012 (Judge Martin), and cases cited. It seems that in recent years the authority of a trial judge to direct a verdict has been narrowed. See Pennsylvania R. R. v. Goldie, [6 Cir.,] 182 F.2d 9 (Judge Simons)."

■ In the present case the conflicting testimony of plaintiff and the defendant's mechanic certainly presented a question of fact as to whether defendant's service garage was adequately lighted, and under the recent decision of the Supreme Court of Michigan in Grover v. Simons, supra, and other authorities cited, that question of fact was properly submitted to the jury for determination. There was testimony from which the jury could have determined that the defendant's service garage was not adequately lighted and that, therefore, it was guilty of negligence.

■ The plaintiff also claims that the defendant was negligent in failing to keep the grease pits in its service garage properly guarded by the use of chains, guard rails or other protective device. At the time of the accident there was a steel rim painted red around the edge of each pit extending about four inches above the surface of the floor. There was testimony that prior to the accident the defendant had maintained a protective chain arrangement around each of the grease pits, the chains being attached to metal posts about three feet in height located in the corners of the pits, but that the chains had been removed and were not around the pits at the time of the accident. There was also testimony that defendant had replaced the protective chains around the pits subsequent to the accident. There was no showing that the defendant was required by State statute or by city ordinance to guard the pits by the use of chains or other protective device. However, we are convinced that the testimony presented a question of fact for jury determination as to whether the defendant was negligent in not maintaining some type of barricade or proctective device around the pits higher than the four-inch steel rim at the time of plaintiff's accident.

In the very recent case of Ackerberg v. Muskegon Osteopathic Hospital, 366 Mich. 596, 597, 115 N.W.2d 290 (decided May 18, 1962), the plaintiff sued the hospital for personal injuries sustained when he fell from an emergency-entrance platform. The plaintiff claimed that his injuries resulted from the negligence of the defendant hospital in failing to construct a guard railing, chain, or other form of protection on the platform. The case was tried to a jury, and at the conclusion of the plaintiff's proofs the trial judge granted defendant's motion for a directed verdict in its favor on the ground that the plaintiff was guilty of contributory negligence as a matter of law. In reversing and remanding the case for a new trial, the Supreme Court of Michigan held that the questions of defendant's negligence and plaintiff's contributory negligence should have been submitted to the jury for determination. The court said at pages 601, 602, at page 293 of 115 N.W.2d:

"The test, then, in the instant case is, would all reasonable men agree as to whether or not defendant hospital had a duty to construct a guard or protection around the rear platform which was used by the general public entering and leaving the emergency entrance of the hospital * * *.

"We do not decide in this case that plaintiff is entitled to recovery, but merely that there is a question of fact as to defendant's negligence which should be submitted to a jury. * * *

"Reasonable men might differ as to whether plaintiff, under the circumstances, was guilty of contributory negligence in failing to observe the platform was without protection.

"We conclude, therefore, under the circumstances in this case, that the court erred in granting the motion for directed verdict."

In its opinion in the foregoing Ackerberg case the Supreme Court quoted with approval from Grand Trunk Railway Co. of Canada v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 36 L.Ed. 485, as follows:

"When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court."

See also Hayes v. Richfield Oil Corp., 38 Cal.2d 375, 240 P.2d 580; Kelley v. Goldberg, 288 Mass. 79, 192 N.E. 513; Davis v. Wade Motor Sales, 100 N.H. 12, 117 A.2d 924.

▮ Plaintiff further contends that the defendant was negligent in that its employee Dorr failed to lead him along a safe route or path while traveling through the service garage. Plaintiff presented no testimony showing that there was any absolutely safe route through the garage, or any route that would have been safer than that along which he was led. In the absence of proof that there was a safer route or path over which plaintiff could have been led, there was no question of fact for jury consideration.

▮ A more serious problem is presented by defendant's contention that the plaintiff was guilty of contributory negligence as a matter of law. Defendant cites and relies upon Neal v. Cities Service Oil Co., 306 Mich. 605, 11 N.W.2d 259 (1943), in which the plaintiff fell through a trap-door opening in the floor of a service-station rest room. In holding that the plaintiff was guilty of contributory negligence, the Supreme Court said, page 610, 11 N.W.2d page 260:

"We hold that when an adult possessed of all normal faculties walks into a small well-lighted room, past such a floor opening as herein described, stands for five minutes near the edge of the opening, and then in a moment of carelessness steps backward into the opening, such person is not using the care that an ordinarily careful person would use in like circumstances. Plaintiff was guilty of negligence as a matter of law."

In further support of its contention that plaintiff in the present case was guilty of negligence as a matter of law, defendant cites Elliott v. Dahl, 299 Mich. 380, 300 N.W. 132 (1941); Blankertz v. Mack & Co., 263 Mich. 527, 248 N.W. 889 (1933); Evans v. Orttenburger, 242 Mich. 57, 217 N.W. 753 (1928); Larned v. Vanderlinde, 165 Mich. 464, 131 N.W. 165 (1911). It can be argued that under these earlier decisons of the Supreme Court of Michigan the plaintiff in the present action could be held to be guilty of contributory negligence as a matter of law, which would bar his recovery in this action.

However, it should be noted that in more recent decisions the Supreme Court of Michigan has held that where there is any question or doubt as to plaintiff's contributory negligence, the question should be submitted to a jury for determination. In Normand v. Thomas Theatre Corporation, 349 Mich. 50, 84 N.W.2d 451 (1957), the plaintiff fell down an unlighted stairway while groping in the dark for a light switch and was injured. The Supreme Court said, page 56, 84 N.W.2d page 454:

"When it can be affirmed that all reasonable men would agree as to the quality of an act in respect of its being either negligent or prudent, the court may give effect to such consensus of opinion, and direct a verdict in accordance therewith.

\* \* \* If there is doubt as to whether all reasonable men would draw the same conclusion from the evidence, then the question must be submitted to the 12 reasonable men appointed by the constitution to determine disputed or doubtful questions of fact."

In McKinney v. Yelavich, 352 Mich. 687, 692, 90 N.W.2d 883, 885 (1958), the Supreme Court said:

"Only under the most extreme circumstances, those, in fact, where reasonable minds could not differ upon the facts, or the inferences to be drawn therefrom, can the case be taken from the jury. If honest differences of opinion between men of average intelligence might exist, the issue should not be resolved by the court alone."

In Shaw v. Bashore, 353 Mich. 31, 40, 90 N.W.2d 688, 692 (1958), the Supreme Court said:

"We seek to serve notice that we ourselves take an unfavorable view of this developing new doctrine of 'unfavorable view.' We also seek to smite this growing tendency to take cases away from juries on capricious and arbitrary grounds."

In DeLuca v. Wonnacott, 358 Mich. 319, 324, 325, 100 N.W.2d 288, 291 (1960), the court said:

"One of the things this Court has latterly been at some pains to achieve is to restore litigants to their jury day in our courts, and not allow that day to be cut off peremptorily except when there is no reasonable issue for the jury to pass on."

In Budman v. Skore, 363 Mich. 458, 462, 109 N.W.2d 791, 793 (1961), the court said:

"We have repeatedly held that on a motion for directed verdict the evidence must be viewed in the light most favorable to the party opposing the motion and that to justify the taking of a case from the jury the evidence must be such as to preclude any reasonable view establishing plaintiff's claim for the right to recovery."

See also Ackerberg v. Muskegon Osteopathic Hospital, supra, 366 Mich. 596, 597, 115 N.W.2d 290.

In further support of his contention that the question of his contributory negligence was properly submitted to the jury, the plaintiff cites Firestone Tire & Rubber Co. v. Arrington, 5 Cir., 197 F.2d 699; McDonald v. F. W. Woolworth Co., 4 Cir., 177 F.2d 401; Engel v. Smith, 82 Mich. 1, 46 N.W. 21; Philips v. Sun-Best Fruit Distributors, 160 Cal.App.2d 70, 324 P.2d 948; Hayes v. Richfield Oil Corp., 38 Cal.2d 375, 240 P.2d 580; Purdon v. Cohen, Fla.App.1961, 126 So. 2d 575; Kelley v. Goldberg, 288 Mass. 79, 192 N.E. 513.

We are convinced that under the more recent decisions of the Supreme Court of Michigan hereinbefore cited and discussed, the question of plaintiff's contributory negligence in the present action was properly submitted to the jury for its determination. Having returned a verdict for plaintiff, the jury obviously found that he was not guilty of contributory negligence.

We conclude that the district court did not err in submitting to the jury the question of whether or not the defendant was guilty of negligence, which was the proximate cause of plaintiff's injuries, and did not err in submitting to the jury the question of whether or not plaintiff was guilty of contributory negligence. For the reasons herein stated we affirm the judgment for the plaintiff.

SHACKELFORD MILLER, Jr., Chief Judge (dissenting).

As stated in the majority opinion, the plaintiff in this action, under the following decisions of the Supreme Court of Michigan, would be guilty of contributory negligence as a matter of law, which would bar his recovery. Larned v. Vanderlinde, 165 Mich. 464, 131 N.W. 165; Evans v. Orttenburger, 242 Mich. 57, 217 N.W. 753; Blankertz v. Mack & Co., 263

Mich 527, 248 N.W. 889; Elliott v. Dahl, 299 Mich. 380, 300 N.W. 132.

The majority opinion, however, expresses the view that recent decisions of the Supreme Court of Michigan require that the issue of plaintiff's contributory negligence under the facts of this case be submitted to the jury. I recognize that they have probably liberalized the rule on such an issue in favor of a plaintiff. But, accepting the rulings in those cases as being the present Michigan law on the subject, I believe the factual situation in the present case is so materially different from what was before the Court in those cases as to cause us to adhere to the rulings in the earlier Michigan cases above referred to, rather than to submit the issue to the jury. Several of the cases cited involve automobile accidents involving moving vehicles, which I think present a materially different factual situation from that in the present case. Normand v. Thomas Theatre Corp., 349 Mich. 50, 84 N.W. 2d 451, where the plaintiff fell down an unlighted stairway while groping in the dark for a light switch, is factually similar, but differs in the most important fact that the plaintiff did not know of the existence of the stairs down which she fell. In the present case the plaintiff knew the grease pit was there. He stood beside it for ten or fifteen minutes. His vision was normal, and irrespective of whether the light was bright or "dim," he testified that he saw the pit and that he knew he was walking beside it. The width of the walkway between the pits was a little over 6 feet, affording plenty of room to avoid the pit. He testified that he started to walk down the center of it. If he veered substantially to the right so as to bring him to the edge of the pit with the resulting accident, it was his own voluntary action, heedless of his own safety. With the known danger of the open pit on his right, it was clearly his duty to watch where he was walking. Obviously, he did not do so. He did not claim that he slipped on a wet, icy, or greasy walkway. He testified, "as we got to the corner here, I just landed in the pit at the bottom. I don't know what happened."

It was stated in Elliott v. Dahl, supra, 299 Mich. 380, 382, 300 N.W. 132, 133, "This court is definitely committed to the holding that one going about in public places or semipublic places, when possessed of his natural faculties, may not escape being charged with negligence if he is heedless of his own safety. If he fails to use the care that an ordinarily careful person would have used in like surroundings, and in consequence sustains injury, he must bear his own misfortune."

I am of the opinion that the judgment should be reversed.