BREMER, Appellant, vs. PLEISS and another, Respondents.

*February 25—March 22, 1904.*

*Negligence: Passenger elevators: Door partly open: Contributory negligence.*

A guest in an hotel, familiar with the elevator, which was in a dark corner and not lighted in the daytime, approached it, having in mind the question whether the car was there or not, but it was too dark for him to see, although he looked. The door stood about half open. He pushed it open with his shoulder, stepped in, and fell down the shaft. A few moments before, he had stepped into the car through the door, which was then fully open. *Held*, that he was guilty of contributory negligence as a matter of law.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This is an action to recover damages for personal injuries resulting from falling down an elevator shaft. The accident happened on the 26th day of August, 1899, at about 11:30 o'clock a. m. The defendants on and prior to that day were proprietors of a hotel called the Schlitz Hotel, in the city of Milwaukee, in which there was an elevator for the convenience of patrons. The plaintiff was at that time, and for several weeks prior thereto, a guest at said hotel, and had been in the habit of using the elevator. It appeared by the testimony of the plaintiff that on the day named he came into the hotel with a friend named Koenig; that they walked into the office, and the plaintiff obtained the key of his room; that they then stepped to the elevator, and finding the door open, walked in (the car being there), and rang for a bell boy to take them upstairs; that no bell boy came, and Koenig suggested they go into the barroom of the hotel and have a glass of beer, which they did; that when they returned to the office, a few minutes later, a bell boy was sitting on a bench near the elevator; that the plaintiff was ahead of Koenig, and

arrived at the door of the elevator first. The plaintiff testifies with regard to the situation at this time as follows:

"Came back again in a few minutes. There was then no boy in the car. Could not see any boy, except on the bench. Could not see any car. I stepped in. The door was open wide enough for me to step in. I do not know how far the door was open. I did not measure it. It might have been half open. I do not know how far. I might have pushed it with my shoulder in stepping in. . . . When Mr. Koenig and I came from the barroom, I intended to go to my room, and intended to use the elevator. *Q.* As you approached the elevator, did you have your mind on the question whether the car was there? *A.* Yes, sir. *Q.* And did you look to see if it was there? *A.* It was too dark. Could not see anything. I looked for the elevator, made a step, and fell down. I looked for the elevator while I was stepping in. I looked before I stepped in—looked at the open hole there. I did not see the car. I did not notice it. I saw the bell boy was on the bench. I did not see any bell boy in the shaft. It was dark in the shaft. I did not see anything. *Q.* How long before you stepped down was it that you looked into the open door and could not see anything there? *A.* I don't know. I think, one step. *Q.* When you looked into the door, you could see no car and no boy. If you had stopped, you would not have fallen, would you? *A.* I expect I would not have fallen. I never seen the elevator door open when the car was not there. . . . *Q.* What did you say was the fact as to the position of that elevator door when you and Koenig went there—whether it was clear open or partly open? *A.* It was about half open. I pushed it with my shoulder, stepping in. I did not push it open with my hands. I did not touch the door with my hands, to my knowledge."

The plaintiff further testified, in substance, that it was so dark at the door of the elevator that he could not see whether the car was there or not in the daytime. The fact is that no car was there, and the plaintiff fell down a distance of about nine feet, to the bottom of the elevator shaft, and was seriously injured. The negligence claimed is the leaving of the

elevator door open in a place where it was so dark that one could not see into the elevator shaft. Koenig was called as a witness, and corroborated the testimony of the plaintiff as to their stepping into the elevator shaft the first time, and waiting, and then going to the barroom for a glass of beer. On the return, Koenig testifies as follows:

"He [*Bremer*] went first. I followed him right up. Went through the same place we had before. *Mr. Bremer* got to the elevator, to the lower part of the hall or office, and it was kind of dim. I followed him. I could not see all that was going on, because got to have a light in a dim place. All at once I heard a shriek. I went up, and lay forward. There was a hole perfectly dark. I looked down, and I heard him moan below. . . . It was not light enough for me to see. It was dark. I would call it dark when I went in the second time. . . . When *Bremer* walked ahead of me, I was behind, and he walked on till he got to the elevator. All I know, he stepped in there and fell down. That's all I recollect."

It further appeared that the plaintiff signed a written statement about ten months after the injury, and before he was recovered therefrom, in which he said:

"When I got there the door was partly open. Thinking the elevator was there, I pushed the door back to the west, and stepped into the shaft. The door was open about eight or ten inches when I pushed it back."

The plaintiff claims, however, that at the time of the signing of this paper he did not know what he was doing.

At the close of the plaintiff's testimony the defendant moved for a nonsuit, and the same was granted, on the ground that the evidence showed the plaintiff to be guilty of contributory negligence. Judgment for the defendants being rendered, the plaintiff appeals.

*M. C. Krause,* for the appellant.

For the respondents there was a brief by *Joseph B. Doe,* attorney, and *Hoyt, Doe, Umbreit & Olwell,* of counsel, and oral argument by *Mr. Doe.*

Winslow, J.   There was doubtless ample evidence tend-
ing to show negligence on the part of the defendants in the
management of this elevator.   The plaintiff's evidence tended
to show that it was located in a dark corner of the office room,
and so arranged that in the daytime it was nearly or quite
impossible to see into the shaft; that no light was maintained
either outside of the shaft or inside of the car during the day-.
time; and that on the occasion in question the door of the
shaft was left partway open when the car was not there.   This
court has said that it is the duty of the proprietors of pas-
senger elevators to see that they are "properly and safely con-
structed, and operated with the highest degree of skill and
care commensurate with or proportionate to the possibility
of injury to passengers in the use of such elevators" (*Obern-
dorfer v. Pabst,* 100 Wis. 505, 76 N. W. 338), and this is
in accord with the law universally laid down by the courts.
But as it is not claimed that the evidence was insufficient to
take the question of defendants' negligence to the jury, it is
unnecessary to spend time upon it.   The question presented
is whether the court was right in holding that the evidence
showed the plaintiff guilty of contributory negligence as mat-
ter of law.   The facts as shown by his own evidence were that
he was very familiar with the elevator, and knew that it was
in a very dark place and was not lighted in the daytime; that
he approached it, having in mind the question whether the
car was there or not; that before stepping in he looked at the
open hole, and saw no car, because it was dark; that the
door was only partly open—about half open—and that he
pushed it open with his shoulders and stepped in; that only
a few moments before he had stepped into the car through the
door, which was then fully open.   Upon these facts, is there
a question for the jury?   There is no doubt that, when a
door to an elevator shaft is thrown open by the attendant,
that very act constitutes an invitation to enter.   *Tousey v.
Roberts,* 114 N. Y. 312, 21 N. E. 399; *Oberndorfer v. Pabst,*

*supra.* So it has been held that, where the door is fully open and the shaft is dark, the question whether a passenger is guilty of contributory negligence in stepping in without examination is one for the jury. *People's Bank v. Morgolofski,* 75 Md. 432, 23 Atl. 1027; *Southern B. & L. Asso. v. Lawson,* 97 Tenn. 367, 37 S. W. 86; *Dawson v. Sloan,* 49 N. Y. Sup. Ct. 304, affirmed in 100 N. Y. 620. We have found no case, however, holding that where the door to the shaft is only halfway open, so that the passenger entering is obliged to, and does, open it the rest of the way in order to enter, the question of contributory negligence is a matter of doubt; nor do we see how it could be so held. It seems to us entirely clear that the fact that the door is only partway open is a definite and unequivocal advertisement that something is wrong—certainly not an assurance that the car is there. The use of passenger elevators is now so universal that all know that when an elevator car is brought to a standstill, ready for passengers to enter or leave, the door is always thrown wide open. A door only halfway open is a plain suggestion of some unusual condition—a hint to investigate, not an invitation to enter or an assurance of safety. In this view of the evidence, we think the nonsuit was rightly granted.

*By the Court.*—Judgment affirmed.