## CLARENCE BRIDGES v. HERBERT HILLMAN.

82 N. W. (2d) 615.

April 26, 1957—No. 36,995.

*Samuel Saliterman, Michael L. Robins, J. Patrick Leavitt,* and *Charles Alan Wright,* for appellant.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court and the order denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The trial of this action before a jury was instituted by plaintiff Bridges, a sales employee of Porter Electric Company, against defendant Hillman, the owner and lessor of a building in Minneapolis occupied by Porter Electric Company as lessee, to recover for injuries

sustained by plaintiff in falling into the elevator shaft located in the building.

The building in which the accident occurred was principally used as a warehouse by Porter, the lessee-employer, although it also contained administrative offices. The elevator was located in a rear corner of the building and serviced the basement and three floors of the building. On the first floor (ground level) in the front center of the building were two large doors through which trucks could enter. The top one-third of these doors was glass and furnished some light, although quite dim, to the vicinity of the elevator about 70 feet to the rear. There were lights suspended from the ceiling of the warehouse which afforded illumination to the vicinity of the elevator and there was also a light with a pull chain directly in front of the elevator. Leading into the elevator shaft was a door (two halves opening in the middle) which faced the center of the warehouse rather than the front and which was about 14 to 16 inches from the elevator. There was also a slatted gate in front of the elevator which could be lifted to permit entrance to the elevator. The elevator did not have interlocking gates; this was in violation of an ordinance of the city of Minneapolis.

The accident resulting in the injury occurred on Saturday morning, August 11, 1951. Porter Electric Company was a wholesaler of electrical equipment. With the exception of one salesman—serving on a rotation system—being present in the morning, the employees of Porter were not required to work on Saturdays. Plaintiff came to work about 8:30 or 9 a.m. that Saturday morning—although it was not his regular morning to work—because he wanted to attend to some details that had accumulated. All salesmen had keys and might come in on Saturday if business required it.

Plaintiff, upon arriving, looked over his desk and then went out for coffee about 9:30 with George L. Larkin, another employee. When plaintiff returned he took the elevator to the third floor to look for some transformers. He was familiar with the elevator and had used it many times in the past. He then returned to the office and about 10:30 plaintiff, Larkin, and Harry P. Anderson, a sales-

man of Wagner Electric Corporation, visited a cafe-bar where plaintiff had coffee and one drink of whiskey. Upon his return to the warehouse, plaintiff again took the elevator to the third floor to look for the transformers. On each of these trips the lights in the warehouse ceiling were on but he was not sure whether the light in front of the elevator was on. He testified that if it was not on he did not turn it on as there was sufficient light so that he could see to open the elevator gates. The elevator was at the ground floor both times and the gate was down. Plaintiff again returned to the office and at that time Larkin, Anderson, and George Robison, another employee of Porter, were there. About 11:30 a. m. Larkin, Anderson, and plaintiff went to the cafe-bar again and plaintiff and Larkin had two drinks of whiskey. It is not clear when Robison left the warehouse, although plaintiff testified at one place in the record that he "believed" Robison left the warehouse before him, but Robison did join the group while they were in the cafe. Larkin and plaintiff returned to the warehouse again about 11:45 a. m. and Larkin left shortly thereafter.

Larkin testified that another employee and a former employee came into the building between 9 and 11 that morning and used the elevator. Plaintiff said he did not see them, although the evidence is somewhat conflicting on this point.

After Larkin had left plaintiff decided to make one more check for the transformers on the third floor. Plaintiff testified that he observed no one in the area as he approached the elevator. He further said that at that time the lights in the warehouse were off, although it is not shown when or by whom they had been turned off. On this third trip as he came to the area where the elevator was located he said the light in front of the elevator was not on and that he did not turn it on at that time. He said there was sufficient light that he could see that the gate was down. Concerning the elevator he testified, "I thought the elevator was at the floor level; I thought I saw it." He made his observations through the slats of the gate but would not say whether, after making these observations, he looked again before stepping into the elevator shaft. When asked on cross-

examination, "After you raised the gate up and before stepping into the elevator, did you then make another observation to determine whether it was there?" he replied, "I raised the gate and stepped in, in one motion." Testimony was introduced by plaintiff and others to the effect that even though the slatted gate was down, it had no bearing on the whereabouts of the elevator. As was customary in the summertime, the door (two halves) in front of the gate and elevator was propped open.

With reference to the questions raised by defendant on this appeal, we regard his contention that plaintiff was guilty of contributory negligence as a matter of law as the decisive issue of the case. For that reason the somewhat detailed statement has been made of the evidence bearing directly on that issue.

This court said in Johnston v. Tourangeau, 193 Minn. 635, 638, 259 N. W. 187, 189, regarding contributory negligence: "The duty of care for others manifestly should be no higher than the duty of self-protection. No one can justly complain of another's negligence, which, but for his own wrongful interposition, would have been harmless." The contributory negligence rule is based on the idea that under all situations of danger it is for every rational person to exercise due care for his own safety. Whether such care has been exercised is ordinarily a question of fact for the jury. However, in occasional cases it is so clear that a plaintiff has omitted an obvious precaution for his own safety, required by any measure of due care, however lax, that it becomes the duty of a court to pass on the question. Rintala v. Duluth, W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562. Thus, in order for defendant to prevail on the issue of contributory negligence in this case, it must be determined from the evidence, viewing it in the light most favorable to plaintiff, that all reasonable men must conclude that plaintiff did not exercise that degree of care under the circumstances which a rational person would exercise for his own safety. Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Rintala v. Duluth, W. & P. Ry. Co. *supra.*

Here we have a situation where the plaintiff was familiar with the building and with the features and operation of the elevator.

He knew that the slatted gate's being down did not signify the whereabouts of the elevator. He knew of at least two other employees who were in the building, and the evidence does not establish that he knew of their whereabouts at all times so that he could believe that they had not used the elevator or that the elevator must be where he had left it. Also, we are compelled to infer that plaintiff knew that others had keys to the building and that it was possible for someone to have entered the building and used the elevator in his absence. He knew that as he approached the elevator the light was very dim, and his testimony shows that the circumstances were such that he could not and did not feel *positive* that the elevator was there. He "thought" he saw it. Yet he did not turn on the light immediately in front of the elevator. Further, on thinking that he saw the elevator as he approached, although aware of the very dim light, he did not look again or take any other precautionary measure after raising the gate and before stepping forward—into the shaft. We believe that all reasonable men must conclude on these facts that plaintiff did not exercise that degree of care for his safety which the law requires.

While this case must be determined upon the principles and standards of the laws of negligence as they apply to conduct, there are many "elevator cases" in which courts have dealt with this singular fact situation. Murray v. Albert Lea Home Investment Co. 202 Minn. 62, 277 N. W. 424, is a Minnesota case closely in point. In that case plaintiff was a member of a lodge which had its clubrooms on the sixth floor of a downtown building in Albert Lea. Plaintiff, being familiar with the premises, entered the dimly lighted lobby of the building about 11:30 p. m. and was going to take the elevator to the sixth-floor clubroom. He said he was unable to tell whether or not the elevator was there. Believing that the partially open elevator door signified the presence of the elevator, and not looking further, he stepped forward into the shaft. In holding plaintiff contributorily negligent as a matter of law, this court stressed (1) the plaintiff's familiarity with the premises and the circumstances of after-regular-hours use of this elevator; that his familiarity resulted

in knowledge that if the door were partially open on the first floor it was also likely to be open at some other floor and that the elevator could be at either floor, and (2) plaintiff's lack of precautionary measures in view of the danger sign presented by the dim-dark light conditions and his familiarity with the premises and elevator. Thus, familiarity with the environment, and the resultant knowledge of the possible danger, is an important factor in such cases as this and was the basis of two decisions cited in the Murray case, namely, Rice v. Goodspeed Real Estate Co. 254 Mich. 49, 235 N. W. 814, and Blankertz v. Mack & Co. 263 Mich. 527, 248 N. W. 889.

The ready availability of a light, providing a safe course of action, was a decisive factor in support of the holding of contributory negligence in Johnson v. Citizens Nat. Bank, 152 Ohio St. 477, 90 N. E. (2d) 145, 34 A. L. R. (2d) 1361. In that case, as in the case here, plaintiff thought he saw the elevator but made no effort to turn on the light at hand to make certain that the elevator was there. In Huyink v. Hart Publications, Inc. 212 Min. 87, 2 N. W. (2d) 552, where the plaintiff suffered an injury in a dark basement with which he was not familiar because he chose to rely on a flashlight and ignored the light which could have been turned on, this court held him to be contributorily negligent as a matter of law. We said in that case that, when a person has equally available methods of doing an act and chooses a dangerous method over a safe method, he has unreasonably exposed himself to injury. Knowledge of possible danger and a subsequent choice of conduct which does not seek to avoid the possible danger also served as the basis for a holding of contributory negligence in Johnston v. Tourangeau, *supra*. See, also, Annotation, 34 A. L. R. (2d) 1366, 1374.

In the instant case plaintiff said he did not look again or take any other precautionary measures after raising the gate and before stepping into the shaft. This conduct was found to be an unreasonable disregard for one's safety in Macon Savings Bank v. Geoghegan, 48 Ga. App. 1, 171 S. E. 853. In that case plaintiff also "thought" he saw the elevator.

For further consideration of plaintiff's conduct in the light which other decisions cast upon this case, we will examine the conduct of plaintiff which is most strongly relied upon by him as being reasonable under the circumstances and entitling submission of the issue to the jury. He contends that (1) since he thought he observed that everyone had left the building and also since he had recently used the elevator, he could therefore expect it to be at its "natural place" on the first floor; (2) that he observed the area in the very dim light and thought he saw the elevator.

First of all, as has been pointed out, the evidence does not establish that plaintiff knew or was in a position to know that no one had used the elevator since he last used it. Secondly, the fact that the warehouse lights were off was a danger sign which indicated that possibly someone had been in the warehouse and could have used the elevator since plaintiff last used it. Also, plaintiff knew that others had a key to the building and could have entered and used the elevator during his third visit to the cafe. Finally, this court said in the Murray case with reference to plaintiff's contention there that he relied on a custom concerning the elevator (202 Minn. 65, 277 N. W. 426):

"* * * When a person enters an environment known to be dangerous, he is not privileged to rely blindly on a custom which is generally observed, but which if not observed will result in his injury. He must use due care to protect himself instead of relying on others to save him from harm. The fact that the door was partly open and the further fact that it was dark were danger signs which should have prompted him to proceed with caution, and he should not have ignored them to place his faith on a custom instead of upon knowledge."

Here the environment was dangerous because of the very dim light and because, as plaintiff knew, the position of the gate did not signify the whereabouts of the elevator. Thus plaintiff's reliance on the "natural place" of the elevator seems to place him in no better position than was Murray in his reliance on custom. Plaintiff argues

that he had left the elevator in place at the first floor but a short time before. This factor was present in two of the cases cited with approval by this court in Murray v. Albert Lea Home Investment Co. *supra.* In Blankertz v. Mack & Co. 263 Mich. 527, 248 N. W. 889, plaintiff had left the elevator on the first floor only two minutes before. In Bremer v. Pleiss, 121 Wis. 61, 98 N. W. 945, the elevator had been at the floor "only a few moments before." In both of those cases the plaintiff was held contributorily negligent as a matter of law even though the time element was shorter than in the case at bar.

Unfortunate as this case may be so far as the plaintiff is concerned, it is our opinion that plaintiff is not excused from his lack of further precaution because the light was very dim and not dark so that he thought he saw the elevator when in fact it was not there. To the contrary, upon recognizing that circumstances were such that he could not be sure of the elevator's whereabouts and knowing that he had the means of finding out for sure if it were there by merely turning on the light immediately in front of the elevator, it appears to us that reasonable conduct with regard for one's safety would require more than a mere "thought" on his part that the elevator was there. Other courts have reasoned in similar fact situations regarding light conditions that, if one must look, then he must look when he can see. O'Dell v. Dean, 356 Mo. 861, 204 S. W. (2d) 248; Wahl v. Kentucky Ignition Co. 312 Ky. 487, 228 S. W. (2d) 22.

Some of plaintiff's cases are controverted by the above-cited cases while other cases cited by him present situations where the plaintiff did not know of the danger present or had some reason to believe that safety features of the elevator would protect him.

In conclusion, plaintiff's familiarity with the premises and elevator and his resultant knowledge of possible danger; his awareness of existing light conditions and his consequent inability to be sure of what he "thought" he saw; his failure to choose the safe method of turning on the readily available light; and his failure to look or take other precautionary measures before he stepped after raising the gate require us to hold, in recognition of the determinations

regarding standards of care made by courts in the above-cited cases, that plaintiff was contributorily negligent as a matter of law.

Judgment reversed.