## CARL E. KNUTSON AND ANOTHER v. ARRIGONI BROTHERS COMPANY.

147 N. W. (2d) 561.

December 23, 1966—Nos. 40,228, 40,250.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *G. T. MacIntosh II,* for appellant.

*Johnson, Essling & Malone* and *Joseph P. Johnson,* for plaintiff respondent.

*Tyrrell, Jardine, Logan & O'Brien* and *Michael J. Healey,* for intervenor respondent.

KNUTSON, CHIEF JUSTICE.

This appeal by defendant, Arrigoni Brothers Company, results from an industrial accident which occurred during the construction of the Floyd B. Olson Junior High School in Minneapolis. Plaintiff Carl E. Knutson, age 47, was employed as a carpenter by the general contractor. The defendant had a subcontract to lay terrazzo floors in the school. Plaintiff intervenor, Fireman's Fund-American Insurance Companies, was the insurer on the general contractor's workmen's compensation and in this

action seeks recovery from defendant of an amount paid Knutson as a result of the injuries hereinafter described.

Terrazzo is a flooring composed of marble chips, concrete, and water. It is applied over a concrete foundation. The application leaves the floor in a rough condition which requires grinding to make it smooth. This is accomplished by a grinding machine which uses water as a lubricant. The byproduct of the grinding results in a souplike mass known in the trade as "terrazzo mud." The mud is left on the floor for a time and is then concentrated in piles and later removed. As the piles of mud are established, the outer portion commences to dry and forms a crust, leaving the inside, or bottom, moist and gooey. As with a semiliquid product, the pile flares out so that at the edges it is thinner. The time required for a pile to dry completely depends on the thickness of the pile and other factors, such as temperature and humidity.

Defendant was in the process of finishing terrazzo flooring in the main corridor of the school's second floor on January 30, 1962. Mr. Knutson and a coemployee, Thomas D. Panek, Jr., were directed by the superintendent of the project to hang doors on the second floor of the building. The doors were stored in the library on that floor. The corridor where defendant's employees were working ran north and south, and the library was located on the west side of this corridor. In laying the terrazzo flooring defendant's employees had accumulated a pile of terrazzo mud in front of the door to the library. This pile was described as about 4 feet wide (from east to west) and about 6 feet long (from north to south) and about 10 to 12 inches in height at the middle. The edge of the pile was about 2 to 2½ feet from the wall. The pile had existed in this location for a period of about a week at the time here involved.

The doors plaintiff and his coemployee were to hang consisted of steel frames in which a glass center was later to be applied. They carried the doors by stepping through the center opening and grasping the edges of the frame and carrying the frames in a substantially horizontal position. In order to remove the doors from the library in this manner it was necessary to step on a part of the pile of terrazzo mud. Mr. Knutson testified that he tested the edge where he was to step and found it solid and believed that it had hardened clear to the floor at that point. The

mud was about 3 inches thick at the place where he stepped. His co-employee carried two doors out of the library, stepping on the same place Knutson had tested, without any difficulty. Knutson carried one door out without difficulty but in carrying out the second door his foot broke through the crust of the mud and encountered the slippery substance underneath, which caused him to fall with the door and sustain the injuries for which he seeks recovery.

It is defendant's contention that plaintiff was guilty of contributory negligence as a matter of law, and also that he assumed the risk of injury occasioned by breaking through the crust of the pile of terrazzo mud. It also contends that there were errors in the court's instructions which will later be discussed.

■ Essentially it is defendant's contention that there were safe methods of removing the doors from the library and that plaintiff chose instead to follow a dangerous course and thus is guilty of contributory negligence as a matter of law.

The following portion of the court's instruction is assigned as error:

"Now, as to the plaintiff's conduct, the existence of alternative methods of doing his work, by which it later appears the plaintiff could have avoided injury, will not compel you to find the plaintiff negligent. Now, I'm not saying that there were alternative methods by which he might have avoided it, but I'm saying that if the jury should find as to the plaintiff's conduct that there were in existence alternative methods of doing his work by which it later appears the plaintiff could have avoided injury, this will not compel you to find the plaintiff negligent. However, the fact that alternative methods of carrying the door were available to the plaintiff may be considered by you in deciding whether the plaintiff used reasonable care. Regardless of the existence of alternative methods, any finding of negligence on the plaintiff's part must be based upon whether or not the plaintiff's conduct was that which a reasonable person would use under like circumstances. Now, in reaching your decision as to whether the defendant or the plaintiff were guilty of negligence, you must consider and base your decision on the facts and the circumstances as they existed at the time of the accident and injury."

We have held that where there are available methods of doing an act safely and a person chooses a dangerous method he is guilty of contributory negligence as a matter of law. Bridges v. Hillman, 249 Minn. 451, 82 N. W. (2d) 615; Hacker v. Berkner, 263 Minn. 278, 117 N. W. (2d) 13. However, in this case the evidence does not establish conclusively that plaintiff had a safer method of removing the doors from the library. Defendant contends that he could have carried the doors vertically; that the two employees could have carried the doors together; that they could have removed the mud or had defendant's employees do so. It is difficult to see how they could emerge from the library with the doors without stepping on some part of the pile of terrazzo mud. Clearly the question of contributory negligence was for the jury, as was the question of defendant's negligence in amassing the pile where it did and leaving it there for the period of time it had been in existence. We need say nothing more about the submission of negligence, proximate cause, and contributory negligence to the jury.

■ The question of assumption of risk continues to be troublesome. So much has been written on this subject and so much confusion exists that it is an exercise in futility to even try to discuss it. For an exhaustive discussion of the question, see Prosser, Torts (3 ed.) § 67. Professor Prosser comes to the conclusion that (p. 452) "[t]he significant difference [between assumption of risk and contributory negligence], when there is one, is likely to be one between risks which were in fact known to the plaintiff, and risks which he merely might have discovered by the exercise of ordinary care." An annotation on the distinction between the two defenses as interpreted by the courts appears in 82 A. L. R. (2d) 1218.[1] We have held assumption of risk is "but a phase of contributory negligence." Swenson v. Slawik, 236 Minn. 403, 410, 53 N. W. (2d) 107, 111.[2]

In a broad sense it may be true that assumption of risk is but a phase

---

[1] See, also, Rice, *The Automobile Guest and the Rationale of Assumption of Risk,* 27 Minn. L. Rev. 323.

[2] See, also, Mayzlik v. Lansing Elev. Co. 241 Minn. 468, 63 N. W. (2d) 380. In Hacker v. Berkner, 263 Minn. 278, 117 N. W. (2d) 13, we again use the same general language and then proceed to point out the difference.

of contributory negligence, but in many cases there are essential differences between the doctrines which cannot be ignored. Thus, in Rase v. Minneapolis, St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L. R. A. (N.S.) 138, and Westcott v. Chicago G. W. R. Co. 157 Minn. 325, 196 N. W. 272, we find extensive discussions of the difference between the two doctrines. Again, in Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395, we find the general language mentioned above but together with it a discussion of the difference between the two doctrines. In that case we said (232 Minn. 247, 45 N. W. [2d] 400):

"* * * [I]t must be recognized that the phase of contributory negligence which is known as assumption of risk is to be distinguished from contributory negligence in the broader sense. Notice or knowledge and appreciation of the danger are indispensable to an assumption of risk. [Citation omitted.] Assumption of risk involves comprehension that a peril is to be encountered and a willingness to encounter it. It differs from contributory negligence, based on carelessness, by being an exercise of intelligent choice."

It thus appears that the essential elements in assumption of risk are a knowledge of the danger and an intelligent acquiescence in it or a willingness to encounter the danger in spite of the knowledge, while contributory negligence involves a departure from that standard of reasonable conduct which is required of an ordinarily prudent person. See, Annotation, 82 A. L. R. (2d) 1218, 1232. No matter how we define assumption of risk we come back to the conclusion that contributory negligence does not necessarily involve knowledge of the danger and willingness to encounter it. It is difficult to see how assumption of risk does not involve departure from reasonable conduct also and in that limited sense it may be a phase of contributory negligence; but it is also something more in that the ordinary tests to establish contributory negligence are not enough to invoke the doctrine of assumption of risk.

■ Stated more concisely, assumption of risk may be invoked only where it appears that the hazard is known to the actor or so plainly observable that he is charged with knowledge of it and, with such knowledge, chooses to assume the hazard of the danger and proceed nevertheless.

See, Syverson v. Nelson, 245 Minn. 63, 70 N. W. (2d) 880. It follows that the converse is true, and where a person is ignorant of the risk or it is not so clearly observable as to charge him with knowledge of it, there can be no assumption of risk. Erickson v. Quarstad, 270 Minn. 42, 132 N. W. (2d) 814; Zuercher v. Northern Jobbing Co. 243 Minn. 166, 66 N. W. (2d) 892; Syverson v. Nelson, *supra*. The very term "assumption of risk" implies that the one who is to be charged with it must know that the risk exists or it must be so plainly observable that he is charged with knowledge of it.

■ Ordinarily, whether a person has knowledge that will permit the application of the defense of assumption of risk is a jury question, at least where there is conflicting evidence or evidence from which different inferences may be drawn; but where there is no conflict in the evidence it becomes a question of law and the court must determine whether the defense is available or not. Geis v. Hodgman, 255 Minn. 1, 95 N. W. (2d) 311. The defense may bar recovery as a matter of law if there is no doubt about its application. Syverson v. Nelson, *supra;* see, also, Bridges v. Hillman, 249 Minn. 451, 82 N. W. (2d) 615.

■ In this case the evidence stands uncontradicted that Knutson tested the solidity of the terrazzo mud at the place where he intended to step before he walked on the pile and honestly believed the crust was solid to the floor. Such belief, even though later proved to be unfounded, belies knowledge of existing danger and willingness to encounter known hazards. In fact, it negates the essential element of the doctrine of assumption of risk, namely, knowledge of the existence of a dangerous condition. Neither can it be said that the danger was readily observable because the pile had formed a crust on the outside and the only thing that made it dangerous was the fact that even where Knutson and his coemployee had stepped it had not hardened clear to the floor. Under these circumstances we believe the court correctly determined that assumption of risk did not apply and should not be given to the jury.

■ We are also convinced that in this case counsel for defendant chose to have the case submitted as it was. Copies of the court's instructions were given to all counsel before the arguments to the jury. So far as the record shows, counsel were satisfied with them and made no request

to have assumption of risk submitted to the jury. Neither did they take any exceptions to its absence after the charge. While Rule 51, Rules of Civil Procedure, does permit errors in instructions with respect to fundamental law to be raised on a motion for new trial, it was never intended that experienced counsel could tacitly agree to instructions of the court which omit a theory that might have been submitted had it been requested, and then, after an adverse verdict, seek shelter under the rule for the purpose of gaining another chance at victory. In spite of this rule, we feel that there is some obligation on the part of experienced trial lawyers to assist the court in submitting issues which they believe are involved in the case. While we are convinced that in this case the court correctly refrained from submitting the defense of assumption of risk, we mention in passing that where counsel deliberately try a case on one theory or permit it to be submitted to the jury with an omission of one of the issues that ought to be submitted, they will find little sympathy here if they seek a new trial under Rule 51.

Affirmed.