MARTIN L. GANSER, JR., A MINOR, BY HIS FATHER AND NATURAL GUARDIAN, MARTIN L. GANSER, SR., AND ANOTHER v. GARY ERICKSON.

156 N. W. (2d) 224.

February 9, 1968—No. 40,495.

*Dorfman & Rudquist* and *John P. Karalis,* for appellants.

*Meagher, Geer, Markham & Anderson, G. T. MacIntosh II,* and *O. C. Adamson II,* for respondent.

PETERSON, JUSTICE.

Plaintiffs seek damages resulting from injuries plaintiff minor sustained while hunting with defendant. The jury returned a verdict for defendant, and plaintiffs appeal from an order denying their post-trial motion to set aside the jury verdict and for a new trial. The issue is whether the trial court erred in its submission of the defense of assumption of risk.

The facts to which the trial court's instruction related are simple and essentially undisputed. Martin L. Ganser, Jr., who will be referred to herein as plaintiff, then age 14, and defendant, Gary Erickson, then age 15, went squirrel hunting together on June 25, 1962, as they had done before on many occasions. The boys rode their bicycles to a wooded schoolyard that day and sighted a squirrel in a tree. They jumped off their bicycles, ran to the tree, and positioned themselves to shoot the squirrel. Defendant stood about 20 feet directly east of the tree and plaintiff stood about 15 to 18 feet southwest of the tree. Plaintiff was about on a 45-degree angle from defendant's direct line of fire, or about 6 or 7 feet off the target line. Defendant was about 5 feet 2 inches in height and plaintiff was about 5 feet 4 inches, but, because there was a downgrade to the west, defendant's head was 1 or 2 feet higher than plaintiff's. The positions taken by the boys were similar to those which they had taken many times before in hunting squirrels, the purpose of which was to have more constant sighting of their tree-circling quarry.

On this day the young hunters were hunting with slingshots and defendant used an acorn for "ammunition." Defendant at this time hurriedly shot at the squirrel when it was between 5 and 7 feet up the trunk of the tree, or at about his eye level. They usually followed the "safe procedures" of shooting upward at squirrels in trees and giving a warning to the other before shooting. Defendant did first call out, "I've got a shot." Plaintiff responded, "Get him." The acorn missile, however,

missed its target and struck plaintiff in the eye, from which he sustained severe damage to his vision.

Plaintiff knew that he was in a dangerous position when he took the position in the area near defendant's line of fire. Although both boys had the reputation of being the "best [shots] around," plaintiff knew that neither could hit their target every time, particularly when using a slingshot and an irregularly shaped acorn missile fired in haste.

■ Assumption of risk, we hold, contrary to plaintiff's initial contention, was an issue for submission to the jury in the circumstances of this case. It was as much an issue for submission as that of contributory negligence, about which plaintiff had no objection. The issues are not the same, of course, but do bear similarities, as Mr. Chief Justice Knutson recently noted in Knutson v. Arrigoni Brothers Co. 275 Minn. 408, 413, 147 N. W. (2d) 561, 565:

"* * * [T]he essential elements in assumption of risk are a knowledge of the danger and an intelligent acquiescence in it or a willingness to encounter the danger in spite of the knowledge, while contributory negligence involves a departure from that standard of reasonable conduct which is required of an ordinarily prudent person. * * * It is difficult to see how assumption of risk does not involve departure from reasonable conduct also and in that limited sense it may be a phase of contributory negligence; but it is also something more in that the ordinary tests to establish contributory negligence are not enough to invoke the doctrine of assumption of risk.

\* \* \* \* \*

"Ordinarily, whether a person has knowledge that will permit the application of the defense of assumption of risk is a jury question, at least where there is conflicting evidence or evidence from which different inferences may be drawn; * * *."

■ The trial court instructed the jury on assumption of risk essentially in the form of Instruction 135, Minnesota Jury Instruction Guides:

"Now plaintiff denies that he was guilty of any contributory negligence and plaintiff further denies that he assumed any risk of this injury.

\* \* \* \* \*

"A person may assume that every other person will exercise reasonable care until the contrary should reasonably appear.

"Assumption of risk is voluntarily placing oneself in a position to chance known hazards. To find that Marty Ganser assumed the risk, you must find that Marty had knowledge of the risk. Two, that Marty appreciated the risk. Three, that Marty had a choice to avoid the risk or chance it, and voluntarily chose to chance it.

"If Marty Ganser assumed the risk, he cannot recover for any injury.

"Assumption of risk should be distinguished from contributory negligence. Assumption of risk does not involve a failure to use reasonable care. A person who does assume the risk is one who voluntarily chooses to chance a danger which is known and appreciated."

Plaintiff contends, however, that the instruction was deficient because it failed to define "the risk" which plaintiff must be found to have knowingly chanced. We would agree that the mere act of hunting does not necessarily invoke an instruction on assumption of risk. Hunting does not inherently impute knowledge of any and all momentary or specific acts of negligence of a hunting partner. This is not to say, however, that certain kinds of activities, such as hunting, are not risky and attended with almost self-defining risk. But although we agree with plaintiff that he did not necessarily assume the risk of being shot in the eye *merely* by going hunting with defendant, we do not agree that plaintiff was in the circumstances of this case prejudiced by a less incisive instruction. The risk of which plaintiff could be found to have knowledge, and therefore to have assumed, would seem to be specifically apparent in this case. To stand in the general line of fire of a hunting partner inescapably involves the known hazard of being struck by the projectile fired, and to do so where the partner is using a weapon and projectile of inherent inaccuracy is specifically to court disaster. A jury might have greater difficulty separating assumption of risk from contributory negligence than in determining what was the risk in these circumstances.

This case is at once distinguishable, we think, from such cases as Lange v. Nelson-Ryan Flight Service, Inc. 259 Minn. 460, 108 N.W. (2d) 428; Id. 263 Minn. 152, 116 N. W. (2d) 266, certiorari denied, 371 U. S. 953, 83 S. Ct. 508, 9 L. ed. (2d) 500. That case arose out of an

aircraft accident in which the pilot and his flight companion, Lange, were killed. It was the subject of two appeals. In the first appeal, the issue related only to the adequacy of the evidence as to the pilot's negligence, and we there took judicial notice that flying an aircraft is a mode of travel in which "the necessity for constant vigilance, and the ever-present threat of disaster in case of accident all require higher skills, greater precautions, and heavier responsibilities to constitute due care" than in others. 259 Minn. 466, 108 N. W. (2d) 432. The issue in the second appeal, relevant here, related to the failure of the trial court to submit the issue of assumption of risk. We there held that an aircraft can no longer be regarded as "a dangerous instrumentality per se" and, therefore, without some evidence which would support a finding that decedent either knew or should have known that a flight therein involved the "particular risk" of "a dangerous maneuver," there was no issue of assumption of risk to submit. 263 Minn. 157, 116 N. W. (2d) 270.[1] The particular risk of a particularly dangerous maneuver was evidenced in the instant case from the available testimony of the parties themselves.

Moe v. Steenberg, 275 Minn. 448, 147 N. W. (2d) 587, is more in point, both as to fact and controlling principle. Plaintiff, a skater who had fallen on the ice, was struck by defendant, another skater who fell on her while skating backwards. We there concluded that being bumped by other skaters is the kind of risk one naturally assumed during skating. Although we did recognize that some conduct of other skaters might be so inept as to be wholly unanticipated, we said that the risks of falling or colliding while skating on an ice rink are not such extraordinary occurrences. The general rule, we held, is that "one who participates in a sport assumes the risks which are inherent in it, *and it is ordinarily for the jury to determine what those risks are*." (Italics supplied.) 275 Minn. 450, 147 N. W. (2d) 589.

Hollinbeck v. Downey, 261 Minn. 481, 113 N. W. (2d) 9, although

---

[1] See, also, Anderson v. Hegna, 212 Minn. 147, 2 N. W. (2d) 820; Stritzke v. Chicago G. W. R. Co. 190 Minn. 323, 251 N. W. 532; Thompson v. Minneapolis & St. L. R. Co. 133 Minn. 203, 158 N. W. 42. These cases, stressed by plaintiff, are likewise so distinguishable in factual setting as to be inappropriate for controlling decision.

not raising the precise contention here made by defendant, is likewise instructive. Plaintiff, age 14½, was shagging golf balls on a practice fairway at a country club. Plaintiff had shagged balls only once before, but he had played golf himself and had caddied for golfers many times, so he knew from experience that golf balls do not always go in the direction intended by the golfer. Plaintiff was struck by a ball driven by Downey, another golfer shooting from a tee adjacent to that of the golfer for whom plaintiff was shagging balls. Plaintiff was about 30 to 40 yards from his player and approximately 30 feet to the side of Downey at the moment he was struck. Golfers on the practice fairway did not normally give warnings before shooting, and Downey gave none. The main issue there was whether Downey was negligent at all, and we held that the issue of negligence was for the jury. We held also, however, that the issue of whether plaintiff was guilty of contributory negligence or had assumed the risk of injury were matters for submission to the jury.

In Aldes v. St. Paul Ball Club, Inc. 251 Minn. 440, 88 N. W. (2d) 94, the issue of assumption of risk was more squarely raised. The plaintiff there was a minor who purchased a ticket for a grandstand seat at the defendant's ball park but moved to an unprotected box seat at the invitation of an usher. He was injured by an errant baseball, a not uncommon occurrence even for professional players. Mr. Chief Justice Dell discussed the question of plaintiff's assumption of risk in part as follows (251 Minn. 442, 88 N. W. [2d] 96):

"* * * The minor plaintiff, although only 12 years old at the time of the injury, was well acquainted with the dangers inherent in open seats. He had been playing baseball since he was 9½ years old and had attended several games at defendant's ball park, including 10 or 15 from the time he was 11, when he started going to games with Lilly. He was also aware that misdirected balls generally land in the box seats."

In Aldes, just as in Hollinbeck, the real issue was whether assumption of risk should be found as a matter of law rather than be submitted to the jury, whereas plaintiff in the instant case argues that it should not have been submitted at all. In both cases there was no question that plaintiff

was unaware of the specific risk involved. Nor is there here. Whether the missile is a golf ball, baseball, or acorn propelled from a slingshot, the potential for error and injury was obvious and the issue of assumption of risk was reasonably left for the jury to determine in the application of ordinary and common knowledge.

Affirmed.