JOHN· RUSSELL GREAVES, TRUSTEE FOR HEIRS OF
RONNIE JOHN GREAVES, v. DAVID GALCHUTT
AND OTHERS.
JOHN RUSSELL GREAVES AND ANOTHER,
THIRD-PARTY DEFENDANTS.

184 N. W. (2d) 26.

February 19, 1971—No. 42293.

*Nord, Webster & Brennan, David W. Nord,* and *Gerald G. Magee,* for appellant.

*King, Rieke, Lommen & Cole,* for respondent Galchutt.

*Robb, Van Eps & Gilmore* and *Douglas Dale Reid,* for respondents John and Lillian Greaves.

*Taylor Law Firm* and *Elmer W. Foster,* for respondent Timothy Greaves.

Heard before Knutson, C. J., and Otis, Rogosheske, Kelly, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

This is an action to recover damages for the wrongful death of a child killed by a rifle discharged by a playmate. The jury found decedent had assumed the risk, and the trustee appeals from the judgment in favor of defendant.[1]

At the time of his death on November 13, 1965, Ronnie Greaves was 11 years of age. That morning he had as a houseguest his friend David Galchutt, one of the defendants, then 12 years of age. After eating breakfast and doing the chores on the farm where he lived, Ronnie went into a front hall closet and took out three rifles and a BB gun. He went into the bedroom occupied by his brother, Timothy, and removed bullets from a dresser drawer. Apparently, his grandmother, who was babysitting, discovered what was going on and with David's help took the bullets from Ronnie. David returned two of the guns to the closet where they were found and hid the BB gun and a .22 rifle in the basement. After lunch, the boys returned to the basement where Ronnie discovered the .22 which David had hidden. At Ronnie's suggestion, they decided to reenact the Kennedy assassination. To that end, David sat on a couch while Ronnie took a position on a picnic table behind him. David heard the gun click and pre-

---

[1] We again call attention to the impropriety of appointing one of the defendants trustee in wrongful death actions. It hardly seems necessary to point out the inconsistency of the decedent's father being both plaintiff and third-party defendant. Minners v. State Farm Mutual Auto. Ins. Co. 284 Minn. 343, 170 N. W. (2d) 223.

tended he was shot. Thereupon, Ronnie handed David the gun and they exchanged positions. When David pointed the gun at Ronnie and pulled the trigger, it fired. The bullet struck Ronnie in the head, killing him instantly.

This action was brought against David, decedent's brother Timothy, and his grandmother. David joined Ronnie's parents in a contribution claim. By special verdicts, the jury found that Ronnie had assumed the risk and was negligent but that his negligence was not a direct cause of the accident. The jury also found that David was negligent and that his negligence was a direct cause of the accident. The other defendants were exonerated.

■ Plaintiff complains of an inadvertent inaccuracy in the court's charge on assumption of risk. No objection was made at the time, and the matter was not called to the trial court's attention in the motion for a new trial. Under Rule 51, Rules of Civil Procedure, the issue may not be raised for the first time on appeal.

■ The thrust of plaintiff's argument is that it was improper to submit the issue of assumption of risk without evidence that Ronnie knew the gun was loaded. We have no difficulty in rejecting this contention. It was the *risk* of the gun's being loaded that he assumed, not the certainty of it, which would have been tantamount to suicide.

Although Ronnie was only 11, he had taken and completed a course in gun safety with a perfect score of 100. This particular .22 rifle had been used by him while attending the gun-safety course. It was a single-shot rifle with which he was thoroughly familiar. His brother, who owned the gun, testified he had inspected it on the previous day and found it was not loaded. David, who fired the fatal shot, was not accustomed to handling guns and testified he did not at any time load the .22. He stated that when he demurred to reenacting the Kennedy assassination he was told by Ronnie, "it is all right because there is no bullets in the gun."

We have discussed the doctrine of assumption of risk so often, it is not necessary again to reiterate the rules.[2]

"* * * [T]he essential elements in assumption of risk are a knowledge of the danger and an intelligent acquiescence in it or a willingness to encounter the danger in spite of the knowledge." Knutson v. Arrigoni Brothers Co. 275 Minn. 408, 413, 147 N. W. (2d) 561, 565.

Under the tragic circumstances of this case, the jury was not only justified in finding that Ronnie assumed the risk but was virtually compelled to do so. It is a classic example of the application of that doctrine. Obviously, it was not necessary that Ronnie know the gun was loaded. To invoke the defense, it was only necessary to show that he had knowledge of the dangers inherent in handling firearms and that he deliberately chose to encounter those dangers. On this record we hold the doctrine of assumption of risk was properly applied.

Affirmed.

---

[2] Hacker v. Berkner, 263 Minn. 278, 284, 117 N. W. (2d) 13, 17; Lieser v. Northern States Power Co. 268 Minn. 95, 107, 128 N. W. (2d) 292, 300; Erickson v. Quarstad, 270 Minn. 42, 50, 132 N. W. (2d) 814, 820; Knutson v. Arrigoni Brothers Co. 275 Minn. 408, 412, 147 N. W. (2d) 561, 565; Stephenson v. F. W. Woolworth Co. 277 Minn. 190, 192, 152 N. W. (2d) 138, 142 (quoting Minnesota Jury Instruction Guides, Instructions 135 and 136); Ganser v. Erickson, 279 Minn. 235, 156 N. W. (2d) 224; Parness v. Economics Laboratory, Inc. 284 Minn. 381, 387, 170 N. W. (2d) 554, 558.