Carlyn M. SANDBORG, Trustee for the Next of Kin of Robert H. Sandborg, Jr., petitioner, Appellant,

v.

BLUE EARTH COUNTY, et al., Respondents.

No. C6–99–243.

Supreme Court of Minnesota.

July 27, 2000.

Patton, Hoverstein & Berg, P.A., Keith L. Deike, Waseca, for appellant.

Johnson & Lindberg, P.A., Roger L. Rowlette, Minneapolis, for respondents.

## OPINION

RUSSELL A. ANDERSON, Justice.

When a jailer has a legal duty to protect a detainee from a reasonably foreseeable risk of suicide and the detainee commits suicide, is the fault, if any, of the detainee for his death to be determined and apportioned with the fault, if any, of the jailer?

Appellant sued Blue Earth County and two jail employees for wrongful death after her son, Robert Sandborg (Sandborg),[1] committed suicide while in custody at the Blue Earth County Jail. At trial the jury was instructed that if the employees of the county and Sandborg were found at fault and the fault of each caused Sandborg's death, then such fault was to be compared and apportioned between the parties. The jury found that the county and its employees were not at fault, but that Sandborg was at fault and that his fault caused his death. Appellant moved for judgment notwithstanding the verdict or a new trial, claiming the trial court erred in allowing the jury to determine and apportion Sandborg's fault with that of the county. The trial court denied the motion. The court of appeals reversed on a separate ground,[2] but concluded that the trial court did not err in instructing the jury on comparative fault. See Sandborg, 601 N.W.2d at 198. We reverse and hold that comparative fault[3] is not applicable to a wrongful death action where the risk of a detainee's suicide is reasonably foreseeable and the jailer has a duty to protect the detainee from the risk of suicide.

On Friday, May 14, 1993, 24–year–old Sandborg called Mankato police and admitted that earlier that day he had sexual-

---

1. Appellant Carlyn Sandborg will be referred to herein only as appellant.

2. The trial court instructed the jury that they were to determine whether the county had a legal duty to protect Sandborg from self-inflicted harm. The existence of a duty is generally a question of law for the court, not the jury. See Larson v. Larson, 373 N.W.2d 287, 289 (Minn.1985). On appellant's motion for a new trial, the court recognized its error but concluded it was inconsequential because the jury found that the county employees were not at fault. The court of appeals reversed, concluding that the error was not harmless because the jury's determination that the

county was not at fault could have been based upon the determination that the county had no legal duty to protect Sandborg. See Sandborg v. Blue Earth County, 601 N.W.2d 192, 197 (Minn.App.1999).

3. By comparative fault we mean not simply the apportionment of damages among separate tortfeasors, but also the predicate finding of fault on the part of the tortfeasor (in this case, Sandborg), and causation. Compare Minn.Stat. § 604.01, subd. 1 (1998) (allowing court to direct jury by special verdict form to determine percentage of fault attributable to each party).

ly touched an 11–year–old girl. He was shaking and had been crying when the officer arrived to arrest him.

Once in custody Sandborg told the arresting officer that he either had to tell someone about the incident or get a gun and use it on himself. He said that he really thought about killing himself. The arresting officer asked him if he was still thinking about killing himself and he replied, "A little, not as much as before."

The arresting officer completed a personal history form that included the question "Does inmate exhibit behavior suggesting suicide or assault?" The arresting officer answered "yes" because of Sandborg's comments about killing himself and because of the nature of the offense to which he confessed. The arresting officer turned Sandborg over to the custody officer with the personal history form. She told the custody officer of the crime Sandborg said he committed.

The custody officer testified he asked Sandborg if he was suicidal and Sandborg answered, "No, not at this time" or "No, I was, but not now." The arresting officer testified that Sandborg answered that he was more serious about it at one point, but now it "comes and goes." The arresting officer left the booking area and told a second custody officer that Sandborg had made suicidal comments during the interview.

Sandborg was placed alone in a cell with a solid door, walls and viewing ports. After he was placed in the cell a custody officer asked him if he was going to do anything stupid or foolish and he answered no. The custody officer thought Sandborg was okay. Custody officers testified that they kept a close eye on Sandborg and told the next shift about him. However, custodial supervising officers were not told that Sandborg was a potentially suicidal detainee.

County policy required that any unusual medical screening information be transmitted in writing to the jail supervisor. The policy also required that a mental health professional be consulted if a detainee was suspected of being suicidal. Two area hospitals were designated to hold detainees who may be mentally ill or a health risk to themselves or staff.

Sandborg was calm through the weekend. On Sunday, May 16, appellant visited him for a half hour and she did not find him suicidal. Twenty minutes after appellant left, when the custody officer could not relay a message from appellant to Sandborg by intercom, the officer went to the cell and found Sandborg hanging from bed sheets. Two days later he died. A suicide note, an obituary and a drawing of a gallows were found among his personal effects.

■ We granted review solely on the issue of whether Sandborg's fault, if any, is to be determined and apportioned with the fault, if any, of the county. Accordingly, we do not review the court of appeals' conclusion that the county had a legal duty to protect Sandborg against self-inflicted harm. We turn then to the question whether it is appropriate, where the court has determined that a risk of self-inflicted harm is foreseeable and the jailer has a duty to protect against that risk, to allow the jury to determine the fault of the detainee and compare the detainee's fault to the fault, if any, of the jailer. Because this issue is one of law, our review is de novo. *See Hamilton v. Commissioner of Pub. Safety,* 600 N.W.2d 720, 722 (Minn. 1999).

■ The court of appeals held that because of the special relationship between a jailer and a detainee arising from the jailer's custody and control over the detainee, the jailer has a duty to protect a detainee from harm, and where, as here, self-inflicted harm is foreseeable, to protect the detainee from that particular harm. As the court of appeals noted, it is only when a person is particularly vulnerable and dependent upon a second person who holds considerable power over the first person's

welfare, and the risk of harm to the first person is reasonably foreseeable, that this special relationship imposes a legal duty on the part of the second person to protect the first from the expected harm. *See Sandborg*, 601 N.W.2d at 196–97; *see also Donaldson v. Young Women's Christian Ass'n*, 539 N.W.2d 789, 792 (Minn.1995) (noting that absent a special relationship a person has no legal duty to act for the protection of another, even if the person realizes or should realize that action on his part is necessary).

In most special relationship cases comparative fault will be applicable. Comparative fault is applicable where the plaintiff fails to exercise reasonable care for his own protection. *See Knutson v. Arrigoni Bros. Co.*, 275 Minn. 408, 413, 147 N.W.2d 561, 565 (1966). In a special relationship the defendant has a duty to exercise reasonable care consistent with that relationship to prevent harm to the plaintiff, but the plaintiff ordinarily retains his own duty to exercise reasonable care to prevent harm to himself. Each party has a separate duty to exercise reasonable care to prevent harm to the plaintiff. Because both parties' breach of their respective duties contributed to the harm, their faults can be compared.

However, the Restatement of Torts recognizes that there are exceptional relationships where:

> because the duty, and hence the entire responsibility for the situation, has been shifted to a third person, *the original actor is relieved of liability for the result which follows from the operation of his own negligence.* The shifted responsibility means in effect that the duty, or obligation, of the original actor in the matter has terminated, and has been replaced by that of the third person.

Restatement (Second) of Torts § 452, cmmt. d (1965) (emphasis added). Because the original actor is relieved of his duty in these extraordinary circumstances, he can have no fault to be compared.

The court of appeals held that comparative fault was applicable because "Sand-borg had the capacity to share the responsibility for his own well-being[ ]," noting there was no evidence besides his suicidal ideation that Sandborg suffered from a mental illness. *Sandborg*, 601 N.W.2d at 198. While a diagnosis of mental illness is a factor to consider when determining whether the suicide was reasonably foreseeable, a finding of mental illness is not necessary in making a determination regarding the applicability of comparative fault. The Restatement acknowledges that factors used to determine whether a duty has shifted entirely to another are imprecise. *See* Restatement (Second) of Torts § 452, cmmt. f (1965). However, the considerations include "the degree of danger and the magnitude of the risk of harm, the character and position of the * * * person who is to take the responsibility, his knowledge of the danger and the likelihood he will or will not exercise proper care." *Id.*

The jailer-detainee relationship is an exceptional circumstance in which the duty to protect against a known possibility of self-inflicted harm transfers entirely to the jailer, and comparing the fault of the detainee is therefore not appropriate. In this case the risk of self-harm was significant and the county, which was in total control of Sandborg's physical and medical needs, was in a position to take measures to protect against the harm. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (noting inmate must rely on prison authorities to treat medical needs). Indeed, the county's policies required that it take measures to address the risk of self-harm. Accordingly, the duty to protect against Sandborg's self-harm shifted entirely to the county, and it was error to determine and apportion Sandborg's fault in the matter.

An additional reason not to apply comparative fault is that Sandborg's fault is encompassed in the foreseeability determination that establishes the jail's duty. In *Tomfohr v. Mayo Foundation*, we addressed directly the applicability of com-

parative fault to a hospital's common law duty to protect a patient from self-inflicted injury. 450 N.W.2d 121, 125 (Minn.1990). In that case a mentally ill patient was admitted to a locked hospital ward where the medical staff was specifically aware of his suicidal ideations, and yet failed to prevent the patient's suicide. *See id.* at 122–23.

We held in *Tomfohr* that the trial court properly refused to have the decedent's fault determined and compared with that of the hospital on the basis that the decedent's fault was subsumed in the determination of whether the self-destructive act was foreseeable. "When * * * asked * * * to determine whether the suicide attempt was reasonably foreseeable, * * * it is not only unnecessary but also duplicative to again review the patient's conduct to determine whether the patient's volitional act requires the application of comparative fault." *Id.* at 125. This reasoning follows the Restatement of Torts:

> The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. * * * *To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity.*

Restatement (Second) of Torts § 449, cmmt. b (1965) (emphasis added). Therefore, comparative fault is not applicable when one party has a duty to protect another party from committing the very harm to be protected against, in this case self-inflicted harm. Because the jail had the duty to protect Sandborg from self-inflicted harm, and that is the same harm on which the decedent's fault would be based, comparative fault is not applicable.

The county mistakenly argues that not to apply comparative fault is to impose strict liability on all jailers for any suicide death of a detainee. First, the court of appeals held that the county had a duty to protect Sandborg against self-inflicted harm not only because of the jailer-detainee relationship, but also because the risk of suicide was reasonably foreseeable. *See Sandborg*, 601 N.W.2d at 196–97. Second, the fact that the suicide occurred is not sufficient to impose liability. The plaintiff must still prove that the jail breached the reasonable standard of care. The jury may find that the actions the jail took constituted reasonable care under the circumstances. We hold only that where the jailer has a duty to protect a detainee from self-inflicted harm and fails to fulfill that duty, it does not make sense to offset the jailer's fault by comparing the decedent's fault for inflicting the harm that the jailer had the duty to prevent. Therefore, we do not impose strict liability on jails for every jail suicide.

The court of appeals remanded this case for a new trial and we do not disturb that ruling. We do reverse the court of appeals' determination that the trial court properly submitted the fault of the detainee for determination by the jury. On retrial, the court should not instruct the jury to determine, compare or apportion Sandborg's fault, if any, to the fault of the county, if any.

Reversed and remanded.